[No. 19733.   Department Two.   March 29, 1926.]

CHRIS WOODBURY, *as Administrator of the Estate of Josie E. Woodbury, Deceased, Respondent,* v. HOQUIAM WATER COMPANY, *Appellant.*[1]

[1] JURY (58-1)—CHALLENGE FOR CAUSE—EVIDENCE—SUFFICIENCY. A juror who arrived at the scene of an accident shortly thereafter, and talked with one person who was a witness, is not disqualified, where it appears that he could not remember anything he had heard, did not form any opinion at the time, or since, as to who was to blame, and would decide the case on the testimony.

[2] MUNICIPAL CORPORATIONS (379, 390)—USE OF STREETS—NEGLIGENCE AT CROSSINGS—QUESTION FOR JURY. The evidence warrants a finding that the driver of an automobile, striking a pedestrian at a street intersection, was guilty of negligence which was the proximate cause and which continued until the collision, where, as he approached, he saw her starting across the street a considerable distance away, and had nothing else to take notice of until he ran into her without giving any warning.

[3] SAME (383, 391)—USE OF STREET—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. A pedestrian is not guilty of contributory negligence, as a matter of law, where, before starting across a street intersection, she looked both ways and finding the way clear, started and continued across the street, giving attention to an approaching car on the side street, when she was struck by a car going at great speed and giving no warning.

[4] TRIAL (101, 102)—INSTRUCTIONS—REQUESTS—PARTLY ERRONEOUS OR ALREADY GIVEN. It is not prejudicial error to refuse instructions that are not correct in principal or are covered in others given.

[5] DEATH (35)—DAMAGES—MEASURE OF DAMAGES—DEATH OF WIFE. The measure of damages in an action by a husband for the wrongful death of his wife is the amount of his pecuniary loss.

[6] DEATH (37)—DAMAGES—EXCESSIVE DAMAGES. A verdict for $10,000, in addition to $275 for funeral expenses, for the wrongful death of a wife who was in excellent health and had a life expectancy of 29 years, is not excessive, when it was well within direct evidence of the value of her services.

[1]Reported in 244 Pac. 565.

Appeal from a judgment of the superior court for Grays Harbor county, Campbell, J., entered July 8, 1925, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Frank L. Morgan* and *Poe, Falknor, Falknor & Emory,* for appellant.

*W. H. Abel* and *A. M. Abel,* for respondent.

MITCHELL, J.—This action was brought to recover damages for the death of Mrs. Woodbury, the result of an automobile accident on Lincoln street in the city of Hoquiam. The automobile was being driven by an employee, while engaged in business of the Hoquiam Water Company, a corporation. Negligence and contributory negligence were the issues. Verdict and judgment were for the plaintiff. Defendant has appealed.

[1] The first assignment of error is that, over a challenge for cause, a juror named Husby was allowed to serve as a trial juror, the appellant exercising all of its peremptory challenges. He did not witness the accident or any of the facts leading up to it, but was among those who went to the scene for a short time after it happened. He got there about the time the injured person was taken away. He heard others at that time talk about the accident, but could not recall anyone that he talked with, except one person who, counsel for respondent admitted, was one of plaintiff's witnesses for the trial. He could not remember anything he had heard, did not form any opinion at that time as to who was to blame for the accident, and had no such opinion at the present time. He was asked by counsel for appellant and answered as follows:

"Q. Do you think if the matter was just left right where it is now and no testimony introduced at all that you could render a verdict in the case. Ans. No, sir."

He was further asked, if a controversy arose—"a difference as to what was actually said there by those witnesses at that time, would you take the testimony that was given here or take your own opinion as to what was said." To which he answered, "I would take the testimony that was given here." He was persistent in this attitude of mind and seems to have been frank. The trial court, who took some part in questioning him, was satisfied there was no cause to excuse him, and, upon a consideration of the whole examination, we can find nothing to justify a disturbance of that ruling.

In several appropriate ways, before and after the verdict, appellant questioned in the trial court, as it does on the appeal, the evidence bearing upon the negligence charged against it and that with reference to the counter-charge of the contributory negligence of the decedent, in its contention that the case should not have gone to the jury, but should have been decided as a matter of law in its favor.

There was a decided conflict in the evidence in material respects. Lincoln street, which runs north and south, is thirty-five feet wide and paved. It has curbs and cement sidewalks. It is straight considerable distance each way from the place of the accident. The accident occurred in the day time at a place where Grand avenue runs from the west squarely into Lincoln street. Mrs. Woodbury, the decedent, and Mrs. Kellogg, on returning from an automobile drive, stopped the car, driven by Mrs. Kellogg, facing north on the east side of Lincoln street at a point slightly north of the south sidewalk of Grand avenue extended across Lincoln street. Mrs. Woodbury got out of the car on the right hand side, passed around the rear of it, and started to cross Lincoln street towards the south sidewalk of Grand avenue on her way to her

home, situated on the south side of Grand avenue about a block west of Lincoln street. Appellant's car was driven from the north on its right hand or westerly side of Lincoln street. From this point on, in the trial of the case, the conflict in the evidence occurs.

On behalf of respondent, it shows that the decedent, immediately upon clearing the automobile to the rear, stopped and looked both ways on Lincoln street. At that time a grocery delivery car, several hundred feet away, was coming from the south on her side of the street, the appellant's car was coming from the north, approximately four hundred feet distant, and almost immediately in front of her an automobile a very short distance away on Grand avenue was driving westerly towards Lincoln street that she was crossing. After stopping and looking "she went straight across and never hesitated one moment." On reaching a point about eight feet from the westerly curb of the street she was struck by appellant's car, "her feet went up in the air about eight feet and then she came down and struck on the head of the radiator." She dropped off after the car had gone seventy-five or eighty feet, and the car was stopped a short distance further on.

Appellant's car did not swerve, it went straight. No warning was given by the sounding of a horn or other signal device. No application of brakes was heard and there were no skid marks on the pavement. Covering the distance of about twelve hundred feet before the accident, different witnesses at different points along the way estimated the speed of the car at thirty to forty miles an hour for part of the way, and thirty to thirty-five miles an hour at the time of the accident, one saying twenty-five to thirty miles at the time of the collision. She died three or four hours after the collision.

9—138 WASH.

On the other side, the testimony of the driver of the car is fairly representative. He testified that he came down Lincoln street twenty miles an hour, or a little less. That, when he got in the vicinity of Grand avenue, he noticed the woman come out from behind her car, some ninety or one hundred feet away from him, with the evident intention of crossing the street. She came to about the center of the street and stopped perfectly still and looked up at him, about forty or fifty feet away. "She stood there for a perceptible length of time and, when the car got within a very short distance of her, she started to run. The car was within ten feet and she started to run. She started to run across the street in front of me. The fender of the car struck her and she fell over on the fender . . . . her feet flopped up maybe as high as the fender of the car and the machine carried her or rather pushed her, I should say, not to exceed fifteen feet, and she dropped off on the pavement." When she started to run he jerked the wheel and turned the car into the right-hand curb, and struck it about the time of the collision with Mrs. Woodbury, and that then his car glanced off to the middle of the street. At the time of the collision he was driving about eighteen or twenty miles an hour. The impact of the car with Mrs. Woodbury occurred eighteen or twenty feet south of Grand avenue and she was carried not to exceed fifteen feet. When she started to run in front of the car he applied the brakes as soon as possible. He could not say whether he sounded the horn or not, that he hit it; that he was pretty busy trying to get away from her. In explanation of his not stopping his car for more than eighty feet after the collision, he testified that he had to drive around a parked car on that side to find a place to stop his car against the

curb. Witnesses on behalf of the respondent testified there was no parked car at that place. Each party's version of the facts was supported by more than one witness in nearly all material respects.

The speed limit at that place was twenty miles an hour. The jury was at liberty to believe either party's version of the facts; but, in determining whether the case was properly left to the jury, it is necessary to bear in mind those facts which support the theory of the respondent. Where two lines are being traveled that will cross at right angles, the one by a pedestrian near the point of convergence, the other by the driver of a rapidly moving vehicle quite a distance away, it is common knowledge that, until a very near approach to the common point of travel, the driver of the vehicle has a superior advantage for estimating the speed of the other traveler and taking notice of a threatened collision, for the plain reason that, during that time, he has the other one more immediately and constantly in his view. Especially is this so, if the vehicle is driven at an excessively high rate of speed, known to the driver as such, and of which the other is largely denied an opportunity of discovery because of the increasingly direct approach of the vehicle.

[2] Under the testimony on behalf of the respondent, the jury could very well find, indeed the verdict in legal effect does say, that there was nothing for the driver to take notice of but the pedestrian, who was in plain view at all times, and that the driver's negligence continued until the collision occurred and was the proximate cause of the injury.

[3] As to the charge of contributory negligence, the jury might well find, and its verdict in legal effect does find, that the decedent did take precaution, that she looked to her left, from which a car was approach-

ing on her side of the street, she looked to the right, at which time appellant's car was some four hundred feet distant, and then crossing the street in a resolute manner she was almost facing an approaching automobile which shortly upon entering Lincoln street might turn either south towards her or away from her to the north. Whether under such circumstances she acted as a reasonably prudent person should have acted was plainly a question for the jury. The matter of the negligence of the appellant through the driver of its car was also a question for the jury.

[4] Portions of the instructions are complained of for reasons assigned, which reasons, in part are not correct in principle, while others disappear upon consideration of all the instructions together. Certain instructions requested by the appellant were not given, but the subject of them was covered by another proper instruction in language of the trial court's selection.

[5] The instruction on the measure of damages, complained of by the appellant, limited them to pecuniary loss sustained by the husband and was in accord with the statutes, Rem. Comp. Stat., §§ 183, 183-1, and the case of *Rochester v. Seattle, Renton & S. R. Co.*, 75 Wash. 559, 135 Pac. 209.

[6] Finally it is claimed that the verdict is excessive. It is for $10,000, in addition to $275 for funeral expenses. The decedent and her husband were each thirty-nine years of age at the time of her death. They had been happily married nearly six years. She was in excellent health and had a life expectancy of 28.9 years. The amount of the verdict is well within direct unopposed testimony of the value of her services. A review of the authorities on this subject generally and those cited by respective counsel would afford no definite assistance. They tend both ways. Each

case to a large extent is one unto itself. There is no affirmative showing, or other claim than simply the amount of the verdict, of passion or prejudice. We would not be warranted in disturbing the verdict and judgment.

Affirmed.

TOLMAN, C. J., MAIN, and PARKER, JJ., concur.