[No. 22494.   Department Two.   August 1, 1930.]

GEORGE CANNON, *Appellant*, v. CITY ELECTRIC & FIX-TURE COMPANY *et al., Respondents.*[1]

*Stephen V. Carey*, for appellant.

*Reynolds, Ballinger, Hutson & Boldt*, for respondents.

HOLCOMB, J.—On the trial below, appellant obtained a verdict for $6,250 for personal injuries. Upon a motion by respondents for a judgment n. o. v., the verdict was set aside and the action dismissed.

[1]Reported in 290 Pac. 828.

Respondent City Electric and Fixture Company, on August 9, 1928, was the owner of a certain automobile truck which, at about one o'clock a. m. of that day, was being driven by respondent Brouilett, as its servant, agent and employee, in a southerly direction on First avenue south, in Seattle. Appellant was crossing First avenue south from the east to west side thereof at a point south of Atlantic street, when he was struck by this truck then being operated by respondent Brouilett. First avenue south is sixty-eight feet wide between curbs, and is paved with cobblestones. Atlantic street and Massachusetts street intersect First avenue south at right angles, and are adjoining streets, but are about 660 feet apart. The accident occurred slightly west of the center of First avenue south, 230 feet south of Atlantic street.

At about 1.30 a. m., appellant started to walk to Tacoma by way of First avenue south. He had a large pack on his back, which became disarranged, and he stopped to fix it, while his companion went on. After adjusting his pack, appellant proceeded south some two hundred feet or more on the east side of First avenue south, when he saw some person at about the intersection of Massachusetts street, but on the west side of First avenue south, whom he thought might be his companion. He thereupon started toward the west side of First avenue south, but in a somewhat diagonal direction toward the south. Before leaving the east side of First avenue south, appellant was about in front of a certain coffee store. Appellant looked first to the north toward Atlantic street, and then looked to the south and started across. At that time, there were no cars in that block coming from either direction. He then proceeded across the street somewhat diagonally, and was over on the other side of the car tracks, just a little distance, when he heard

a noise. He turned his head and saw the truck a short distance from him. No street cars or other automobiles passed either in front or behind him after he started to cross the street.

The first he knew of the approach of the truck of respondent that hit him was when he heard the noise of the truck on the cobblestone pavement. When he heard that, he turned and saw the truck about thirty feet away. He did not see it approaching before, and did not look after starting to cross the street. He looked before starting across. He was just at the car tracks when struck, and would have looked before crossing the other part of the street. He was somewhere between the west rail of the west car track and the west curb of the street, when struck. From the slight opportunity he had to judge before being struck, he thought the truck was going between thirty and thirty-five miles per hour from the point where he first saw it until it struck him, which is about thirty feet. As he swerved to avoid it, it hit him. He did not see it sooner, because nothing attracted his attention to it. His mind was on the man down the street. It was an ordinary night, and the pavement was dry. There were street lights at the intersections of Atlantic and Massachusetts streets with First avenue south, and one in the center of the block.

Immediately after the accident, witnesses saw two skid marks about fifteen feet long, the one nearest the curb being six feet from the curb and the other one towards the track. When appellant was picked up shortly after the collision, his feet extended toward the west curb and were about eight feet from it. There was room for the truck to have passed between him and the curb. The truck driver brought his car to a stop about fifty or sixty feet beyond where appellant was struck, and returned to appellant, who was lying

in the street very badly injured. The truck driver first examined to see if there were skid marks on the pavement. Appellant was very seriously injured, with both legs broken, and he was otherwise badly bruised, contused and shocked. One of his legs will remain crippled for life.

The negligence charged by appellant is that the truck was operated at a high, dangerous and unlawful rate of speed in violation of the traffic ordinance of Seattle and the laws of Washington, and was operated without sounding any warning or giving any signal of its approach, although the driver saw, or, in the exercise of ordinary care, should have seen, appellant in the street ahead. Respondents answered, admitting that the respondent corporation was the owner of the truck; that respondent Brouilett was its servant and agent and that appellant was struck at the time and place in question. The negligence charged is denied, and respondents plead contributory negligence. By reply, appellant denies contributory negligence.

Respondent Brouilett, called as an adverse witness, testified that he was the driver of the truck that struck appellant; that the approximate distance between the curb and the side of his truck nearest the curb was from eight to ten feet; that the truck was a Ford between four and five feet wide and that his left front fender struck appellant, he was sure, because it was bent; that he swerved his car toward the curb in an attempt to avoid striking appellant; that there was room enough between appellant and the curb for him to have passed, if he had had the good luck to have made the turn quick enough. After parking his car, he went back to the place of the accident and found some skid marks. He testified that he thought he was going about twenty or twenty-five miles an hour; that he was going home, to West Seattle, after working

all day, and wasting no time in getting there; that the pavement there is cobblestone, and very rough; that, when he first saw the man, he was from six to eight feet away; that there was no other car in sight; that he sounded no horn, because he did not have time to do so; that he did not see the man at all, although there was no other object in the street.

Ordinance No. 53223 of Seattle was introduced in evidence, the pertinent portions of which are § 47, as follows:

"Vehicles shall have the right of way over pedestrians between street intersections and crossings, except while such pedestrians are boarding or leaving street cars."

And § 52 provides:

"In crossing streets pedestrians shall look out for vehicles or street cars and particularly on the left until reaching the center line of the street, and then on the right."

There is another section of the Seattle traffic ordinance prohibiting pedestrians from crossing streets between intersections in the business district, which business district is defined in the ordinance, and which does not include the area here in question. The trial judge thought that appellant was guilty of contributory negligence because of the provisions of § 52 of the ordinance, his idea seeming to be that, if appellant, upon reaching the center line of the street had stopped and looked to the north, he would have seen the approaching truck, and if he had seen it, he would have necessarily kept out of its way and not have been struck.

This idea of the trial judge seems to overlook the fact that appellant testified that he had barely passed the exact center of First avenue south, being just across the car tracks, when struck, and would have

looked before crossing the other part of the street. It also loses sight of the fact that there is nothing in the ordinance proven that prohibits pedestrians from crossing such streets as First avenue south in the locality in question between street intersections. The block in which appellant was crossing the street was an unusually long one, being, in fact, about the equivalent of two blocks in length.

The only conflict in the evidence in this case was as to the speed of the car as between appellant and respondent Brouilett, but the jury were entitled to accept the evidence of appellant and reject that of Brouilett. Furthermore, the testimony by other witnesses as to the skid marks showed that the car had been difficult to bring to a stop, which tended to corroborate the testimony of appellant as to speed. The fact that appellant saw no car to the north on First avenue south, when starting to cross the street, and the evidence of Brouilett that there was no other car in sight on the street when he first saw appellant, also tends to corroborate appellant and make a case for the jury as to primary negligence on the part of respondents.

As to whether appellant was guilty of negligence as a matter of law, and whether his supposed violation of the ordinance is a complete defense to this action, we think the case here presented is stronger than that shown in *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943.

In that case, the accident happened just after noon on an October day. The plaintiff in that action stepped off the curb into the street, and proceeded somewhat diagonally across the street for the purpose of reaching the sidewalk on the other side. Before stepping into the street, he turned and looked north along the street, and, there being an unobstructed view to the mill, from which he had obtained a two-bushel sack of

feed which he was carrying on his shoulder, he saw no vehicle of any kind approaching from the direction of the mill nor along the street in that direction. When he had proceeded to about the middle of the street, and was between the two car tracks, he was struck. We there held that the driver of the truck was guilty of negligence in failing to keep a reasonably vigilant lookout, and failing to sound his horn or gong, and in running in or near the middle of the street. We also there held that plaintiff in that action was not negligent, as a matter of law, in failing to look continuously, after his first precautionary look, to ascertain if autocars were approaching from behind him, especially impeded as he was with a sack of grain on his left shoulder. Cases were cited to sustain that pronouncement. It was also said:

"Even assuming . . . that he was negligent in the first instance, it was for the jury to say whether his negligence continued up to the time of the accident, or whether it terminated after he got into the street so as to be in plain view of drivers of auto-cars. This is especially true in view of the almost conclusive evidence that no horn or gong was sounded."

In the instant case, it is admitted that no horn or gong was sounded.

Respondents rely somewhat upon our statement in *Jones v. Wiese*, 88 Wash. 356, 153 Pac. 330, to the effect that: "Something must be done to insure safety;" but we also there said that, if, by reason of any particular circumstances, the observation (the first look) would be inadequate to disclose such danger, then the pedestrian should look again while crossing. The ruling in that case really has the effect of holding that, having looked once where he could have an adequate view, the question of negligence or no negligence on the part of the injured party is for the jury.

See, also, *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649; *Ridgeway v. Lewis,* 125 Wash. 316, 216 Pac. 355; *Woodbury v. Hoquiam Water Co.,* 138 Wash. 254, 244 Pac. 565; *Moseley v. Mills,* 145 Wash. 253, 259 Pac. 715; *Hooven v. Moen,* 150 Wash. 8, 272 Pac. 50.

Other cases relied upon by respondents, including *Hillebrant v. Manz,* 71 Wash. 250, 128 Pac. 892; *Lewis v. Seattle Taxicab Co.,* 72 Wash. 320, 130 Pac. 341; *Chase v. Seattle Taxicab & Transfer Co.,* 78 Wash. 537, 139 Pac. 499; *Jones v. Wiese,* 88 Wash. 356, 153 Pac. 330; *Collins v. Nelson,* 112 Wash. 71, 191 Pac. 819; *Hoffman v. Hansen,* 118 Wash. 73, 203 Pac. 53; *Wickman v. Lundy,* 120 Wash. 69, 206 Pac. 842; *Twedt v. Seattle Taxicab Co.,* 121 Wash. 562, 210 Pac. 20; *Rhimer v. Davis,* 126 Wash. 470, 218 Pac. 193, are all distinguishable upon their facts or upon the applicable provisions of the ordinances involved therein.

Upon the facts and the law in this case, we are compelled to disagree with the learned trial judge, and to hold that, upon both the primary negligence of respondents and the contributory negligence of appellant, there was a case to go to the jury.

No instructions being attacked, we are bound to presume that the law was properly stated to the jury.

Being concluded by the verdict of the jury upon the facts, the judgment of the trial court is reversed, the verdict of the jury reinstated and judgment ordered accordingly.

MITCHELL, C. J., MAIN, FULLERTON, and FRENCH, JJ., concur.