[No. 24123.   Department One.   January 6, 1933.]

LESLIE G. EATON, *as Administrator, Appellant,* v. F. R. HEWITT, *Respondent.*[1]

*Frank Sanger* and *Robertson & Smith,* for appellant.

*McCarthy & Edge* and *W. E. DuPuis,* for respondent.

[1]Reported in 17 P. (2d) 906.

HOLCOMB, J.—This action was instituted for the wrongful death of one W. H. Eaton, alleged to have been caused through the negligent operation of an automobile owned and driven by respondent. The action was brought by a son of the deceased as administrator of the estate and for the benefit of the surviving widow.

At the conclusion of appellant's case in chief, a motion was made by respondent for a nonsuit or a peremptory instruction for a verdict in favor of respondent, upon the grounds that there was not sufficient evidence to sustain a verdict because of the negligence of respondent, and that the evidence that far indicated the deceased was guilty of such contributory negligence as would preclude a recovery, as a matter of law, even though respondent might have been guilty of any negligence.

The court, in passing upon that motion, among other things, stated that there was no indication in the evidence at all as to what Eaton did; that, as far as known, he may have stopped around in back of the other car; he may have looked and seen the Hewitt car coming, thinking he could easily cross the road before the car reached there; that, if the car had been going at the speed its driver said it was going, he (Eaton) might have misjudged the distance; that, if there was evidence showing that Eaton left the car, went around back of it and right across the road without looking, then, of course, the motion would have to be granted, but there was not; that the facts showed that he was struck almost on the other side of the road. For those reasons, the trial judge said the motion would have to be denied, and it was accordingly denied.

Respondent was then put to his defense, after which, and after some rebuttal testimony on behalf of appellant, the cause was submitted to the jury, which returned a verdict in favor of appellant for the recovery

of $4,418.85. Thereafter, the trial court granted the motion of respondent for judgment notwithstanding the verdict, upon the ground that the deceased was guilty of contributory negligence.

The case made by appellant and which the jury was entitled to believe, omitting some unimportant details, was substantially this:

Eaton was seventy-two years of age, and nearing his seventy-third birthday. He was mentally keen and physically strong, and a man of exceptional business ability and judgment. He was married to Anna B. Eaton, the widow for whose benefit the action was brought, in 1882, and eight children were issue of the marriage, all of whom were past twenty-one years of age at the time of his death. About four years before the accident, he went to California to be with his wife, making visits back and forth between that place and Pullman, Washington, near which he owned three farms.

On one of these farms, appellant was living, and the deceased was making his home there temporarily at the time of his death. This farm was situated three and one-fourth miles south of Pullman, on the main highway from Pullman to Lewiston, Idaho. The house was situated about three hundred feet from the highway, and on its left-hand side going south from Pullman. Leading from the highway to the Leslie G. Eaton house, is a private roadway, referred to in the evidence as a private approach or entrance, which was about thirty-five or forty feet wide at its junction with the highway. The highway at this point was about thirty feet wide from shoulder to shoulder, and the main traveled roadway was composed of oiled macadam about twenty-one feet in width. Directly opposite the center of the private roadway on the other side of the road was a mail box.

On October 3, 1931, the date of the accident, deceased had gone into Pullman at noon with his son, and was left there to attend to business matters. The son returned home, and later in the evening deceased started to walk to the residence of his son, and at about 5:30 p. m. was overtaken by one Davis, a farmer, who was on his way home past the Eaton place. He saw deceased walking on the highway just outside the city limits, and picked him up. He stopped at the Eaton house to let deceased out. He pulled two wheels of his car off on the right hand side of the highway, just south of the mail box. Deceased then got out, passed some remarks to Davis, closed the door, which did not at first catch, opened it and closed it again. Davis had been letting his motor run slightly during that time, and upon the door being closed, put his car in gear and started on down the highway.

Respondent, a road contractor, had driven his daughter and son from Pullman to Colton, a distance of fourteen miles, just for a pleasure ride, and at that particular time they were returning to Pullman. Davis testified that he saw the Hewitt car coming down the roadway about the time he stopped to let deceased out of his car, and that, after he started up, he passed it a short way up the road south of the Eaton entrance. The Hewitt car ran into and killed Eaton as he was crossing the highway on the right-hand side of the road after he had almost entirely crossed the traveled portion of the roadway and was struck by the right front side of Hewitt's car. The large headlight on the right hand front end of the Hewitt car was broken, and also the upper, or cowl, light, on the right-hand side of the car.

Appellant was at his feed rack near his barn at a point several hundred feet south of his house and two hundred or two hundred and fifty feet from the

roadway. From that point, he commanded a view of the roadway for practically half a mile until it entered a cut about three hundred eighty-four feet south of the place of the collision. He was attracted by the noise of the Hewitt car and the unusual speed it was making. He had driven automobiles since 1914, and had been in automobiles driven by others, observed the speedometer, and he testified that, when he saw the Hewitt automobile going north on the road just before the accident, it was traveling at a speed of fifty-five miles, or more, an hour.

Immediately on hearing the collision, · he started for the scene of the accident. It was not so dark but that he could see the body of his father lying on the bank of the road with his feet slightly over the bank, partly on the gravel and partly on the dirt shoulder of the road, lying on· his back. The right side of his skull was crushed, one eye broken, the nose lacerated, and he seemed to be hurt internally as though he were breathing blood. He lived about two hours thereafter. Another witness testified that there was blood about sixty feet north of the mail box on the right hand side of the road coming towards Pullman. Other witnesses testified as to certain details of the scene of the accident, but not as to the accident itself, on behalf of appellant.

While there was some conflicting evidence on behalf of respondent by himself, his daughter and one or two other witnesses, their credibility and the probabilities as to their correctness were for the jury to decide. It seems to us from the above statement of the facts this was a typical case for the jury.

What the trial judge said when denying the motion for directed verdict or nonsuit was just as true at the conclusion of all of the evidence as it was at that time.

Our rule of decision is that, in the absence of evidence to the contrary, as to what one who was killed in an accident did or did not do, bears the presumption that such person exercised due care, unless from all of the evidence the court can say that the contributory negligence of the person killed was so evident that reasonable minds could not differ thereon. *Jensen v. Culbert,* 134 Wash. 599, 236 Pac. 101; *Romano v. Short Line Stage Co.,* 142 Wash. 419, 253 Pac. 657; *Mattingly v. Oregon-Washington Railroad & Navigation Co.,* 153 Wash. 514, 280 Pac. 46. The *Mattingly* case, *supra,* although not cited by appellant, reviews our former cases upon that phase.

It cannot be said to be negligence, as a matter of law, for a pedestrian to cross a traveled highway when an approaching automobile is at least some distance away. *Hooven v. Moen,* 150 Wash. 8, 272 Pac. 50. See, also, *Hillebrant v. Manz,* 71 Wash. 250, 128 Pac. 892.

The jury had the right to believe, and evidently did believe, that Eaton had reached the extreme right-hand edge of the traveled portion of the highway when struck. One more step would have saved him. Why respondent did not see him before he struck him, and swerve his car slightly to the left, thus avoiding hitting him, is hard to explain. He attempted to explain it by saying that he did not see Eaton until just at the instant he struck him. Manifestly, the jury disbelieved that testimony, or, at least, inferred from all the testimony that Hewitt was not watching ahead of him so as to have seen Eaton.

All the cases relied upon by respondent have been examined, but cannot be reviewed within the proper limits of this opinion.

Of the cases cited by respondent upon the question

of contributory negligence of a plaintiff, some were where the person was not killed and the negligence of the plaintiff was shown so conclusively that reasonable minds could not differ thereon. Others were based upon such facts as that the injured person emerged from behind a car with glaring headlights, where it was impossible to observe him. Others were based upon disinterested testimony showing conclusively lack of due care on the part of the injured person. None of the cases fit this case, but under our own rule of decision the case was one for the jury to decide both as to the negligence of respondent and the contributory negligence of the deceased. *Romano v. Short Line Stage Co., supra.*

The trial court erroneously granted the motion for judgment n. o. v., and its judgment should be, and is, reversed.

TOLMAN, C. J., MITCHELL, PARKER, and MILLARD, JJ., concur.