[No. 25198. Department Two. December 26, 1934.]

WORTH W. DURHAM, *as Executor, Appellant,* v. ROBERT CRIST *et al., Respondents.*[1]

*Newton & Newton* and *Wm. A. Johnson,* for appellant.

*James L. Dougherty, Black & Rucker,* and *Whittemore & Truscott,* for respondents.

HOLCOMB, J.—This is an action for damages for the death of Mary Durham, aged 73, occurring on November 8, 1932, at about 10:30 a. m., as the result of being struck by respondents' Ford delivery car at the intersection of Thirty-third street and Tulalip avenue in Everett. Deceased was a pedestrian. There was some mist at various times during that day, but at that hour the visibility was not bad. The Ford delivery car was driven by defendant Crist, who was in the employ of the other defendants.

[1] Reported in 38 P. (2d) 1054.

Thirty-third street runs east and west, and is paved twenty-four feet wide between curbs, with an upgrade of four-tenths per cent to the west at the intersection, which means that it is practically level. It has a parking strip and sidewalk on both sides. Tulalip avenue runs north and south, is unpaved, but gravelled, and is twenty-eight feet in width, with a sidewalk along the portion south of Thirty-third street.

At the time of the accident, Mrs. Durham was returning to her home from a polling place, and was crossing the intersection of Thirty-third street and Tulalip avenue diagonally. The intersection of the two streets is in the residential portion of Everett, and the traffic is seldom, if ever, congested at that point. She was walking in a southwesterly direction, and Crist was driving in a westerly direction on Thirty-third street. When she had almost reached the center of the intersection, she was struck by the car driven by Crist, who was the only eye witness to the actual impact, although another witness, who was apparently disinterested, saw her before she actually struck the pavement. She was struck by the left front fender of the car, thrown backwards so that her head was undoubtedly hit by the fender, causing a concussion of the brain. She fell off the fender to the left side.

Crist testified that, just before the collision, his speed had been not more than eleven miles per hour, and that, when he saw the woman was about to be struck, he reduced his speed to about half that rate. He said that when he first saw her "she was some distance out from the northeast curb about fifteen, eighteen or twenty feet from him, and about eight, ten or twelve feet from the manhole, walking diagonally through the intersection, carrying an umbrella over her left shoulder, and did not turn her head or look

up; that he sounded his horn once and applied the brakes and prepared to stop; that she did not remove the umbrella from her left shoulder, but stopped and hesitated, giving him the impression that she was going to wait for him to pass; that he thereupon removed his foot from the brake, put on the throttle and began to pick up speed to go past her; that, as he did so, she started ahead again, walked directly in front of his car and was struck before he could stop; that he stopped in about three or four feet after hitting her near the left front wheel and just west of the manhole in the center of the intersection; that, when he struck her, the car was still on the righthand side of the street, just a little northeast of the manhole; that he didn't drive around her because she wasn't far enough toward the center of the street.'' His was interested testimony.

Two other apparently disinterested witnesses, who were eye witnesses immediately after the accident, having heard the impact of striking Mrs. Durham and looked up immediately, testified to where the collision occurred, but neither of them testified that Crist sounded his horn. Another apparently disinterested witness, who was carpentering on a house near the northwest corner of the intersection, heard the thump of the impact, looked up immediately, and saw Mrs. Durham falling from the car. He did not testify to hearing any sounding of the horn. He said that the car moved maybe three feet after the impact.

The ordinance of Everett (No. 2318) with regard to street intersections such as this provides:

"Section 41. Pedestrians shall have the right-of-way at street intersections and crossings; vehicles and street cars the right-of-way between street intersections and crossings.''

Section 1-K of the same ordinance defines the word "intersection" as follows:

"Intersection. The area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of two or more streets which join one another at an angle, whether or not one such street crosses the other."

The trial court held that, as a matter of law, decedent was herself negligent in crossing the intersection diagonally. It submitted the case to the jury upon the sole question of whether or not the driver was negligent after he observed her in a position of danger, and gave them an instruction under the last clear chance rule as follows:

"You are instructed that by ruling of this court it has been held that under the evidence no reasonable minded person could conclude that Mary Durham was not herself negligent, in that she did assume and attempt to cross the intersection of Tulalip avenue and Thirty-third street diagonally rather than substantially in the line of the sidewalk or line of travel upon any side of the street extended across the street, and in that she did thus at a time when in broad daylight an automobile was approaching the intersecton from a direction and in a place that she must have seen it, had she looked, in time for her to have avoided collision. But as one thus negligent the law still accorded her the benefit of the performance of the duty of the driver Crist to exercise reasonable care, that is, to do and act in an effort to avoid the collision as a reasonably careful and prudent driver would have done under all the circumstances that you shall believe existed, and if the driver Crist, when he saw Mary Durham in a zone of peril and of danger, failed to thus exercise reasonable care and do all that a reasonable person would have done with the instrumentalities at his command to avoid the collision, and as a direct and proximate result of that one's failure thus to do Mary Durham was struck, and injured, and killed, then and in that event the plaintiff must have a verdict at your hands.

"In event the driver Crist was not thus negligent and did not thus fail, then your verdict must be that plaintiff have no recovery of any sum whatever."

In passing upon the motion for a new trial and discussing the manner in which it submitted the case to the jury, the trial court frankly stated that the city ordinance does not, by its words, define or fix any pedestrian's line of travel at street intersections in that locality, and that the instruction above quoted was error, unless those provisions of the ordinance mean that pedestrians are limited in the lines of the sidewalk upon any street extended across the street. The trial court was, however, of the view that that instruction and submission of the case to the jury would not constitute prejudicial error in this case.

▆▆ We consider the instruction and manner of submission erroneous and manifestly prejudicial.

The ordinance specifically prescribes that pedestrians shall have the right of way at street intersections and crossings, vehicles and street cars the right of way between intersections and crossings. "Intersection" is defined in clear, precise and positive terms as "being all the area embraced within the prolongation of the lateral boundary lines," where there is no prolongation of the lateral curb lines.

The language of the ordinance is clear, and needs no interpretation. It is not the province of the courts to make the law nor to engraft an exception upon the statute, or ordinance, by construction. *Ransom v. South Bend,* 76 Wash. 396, 136 Pac. 365.

While other provisions of the ordinance relating to congested portions of Everett are not before us, it is reasonable to assume that pedestrians are there restricted to the lanes within the sidewalk lines. In *Cole v. Friedman,* 132 Wash. 587, 232 Pac. 361, although the ordinance was not construed, identical pro-

visions of an ordinance of Spokane were before us, as in this case. The evidence was preponderant there, as found by the trial court, that plaintiff was walking from the southwest corner of the intersection diagonally across the intersection, in an uncongested district, to the northeast corner when she was struck by defendants' automobile being driven on the westerly side of the intersection at a point some twelve feet southwest from the corner of the sidewalk curb with the northeast corner of the intersection. It will be observed that the distance from the corner of the intersection in that case was almost identical with that here. In that case, the whole of the intersection was well lighted by electric lights. It was said that the driver of the automobile, as it approached the intersection, could by due attention plainly see the whole of the surface of the intersection, which, up to the time the automobile struck Mrs. Cole, was entirely free from vehicular traffic.

In this case, it was daylight and the jury could have found that, had Crist been observing and attending to his duty, he was bound to have seen Mrs. Durham and avoided colliding with her. His testimony as to what she did not do for her own safety is that of an interested witness. A jury would not be bound to believe it. The presumption, of course, is that she took some precaution for her safety before proceeding across the intersection. As a pedestrian, she had the right of way entirely across the intersection, and had the right to assume that others approaching would be as familiar with the law of Everett as she was. It cannot be said that the ordinance is unreasonable, and no such contention was made in the *Cole* case, *supra.* See, also, *Elmberg v. Pielow,* 113 Wash. 589, 194 Pac. 549. Cf. *Reitan v. Crooks,* 153 Wash. 75, 279 Pac. 97.

Such cases as *Dimuria v. Seattle Transfer Co.,* 50

Wash. 633, 97 Pac. 657, 22 L. R. A. (N. S.) 471, where neither party had the right of way over the other, where this court held that plaintiff in that case failed to exercise any care to prevent injury; *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, and *Steinheim v. Nicholas,* 171 Wash. 614, 18 P. (2d) 836, in which cases plaintiffs were alive and testified, which is contrary to the situation in this case, and showed by their own testimony conclusively that they were culpably negligent as a matter of law, are inapt.

*Smith v. Bissig,* 144 Wash. 491, 258 Pac. 34, relied upon by respondent, was a case where a lady started out on the lane of the cross-walk in a congested area of Enumclaw, then diverted from that lane until she was about nine feet from it, when she was struck by an automobile. She was not killed, and she had taken no precaution for her own safety after leaving the lane of the cross-walk. Similar also are the cases of *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649; *Jones v. Wiese,* 88 Wash. 356, 153 Pac. 330; *Dodge v. Salinger,* 126 Wash. 237, 217 Pac. 1014, and *Moseley v. Mills,* 145 Wash. 253, 259 Pac. 715, and others cited, which are inapt.

The questions both of the negligence of respondents under the "last clear chance" theory and of the contributory negligence of deceased, were questions of fact for the jury.

It is manifest that the case was erroneously submitted to the jury by the trial court, and must be reversed and remanded for a new trial. Other errors claimed by appellant on the giving and refusal of certain instructions may not recur on a retrial.

Reversed and remanded.

BEALS, C. J., MITCHELL, STEINERT, and BLAKE, JJ., concur.