[No. 25283. Department Two. May 23, 1935.]

ARCHIE W. HINTON, *as Administrator, Respondent,* v. EARL A. CARMODY, JR., *et al., Appellants.*[1]

[1]Reported in 45 P. (2d) 32.

*Pearson & Potts,* for appellants.

*John J. Kennett* and *Graham K. Betts,* for respondent.

HOLCOMB, J.—A noticed motion to strike and refuse to consider the brief of respondent, heretofore heard and passed to determination on the merits, is denied for the reason that Mr. Kennett, the principal attorney for respondent, was compelled to devote most of his time and activities, after the appeal was taken herein, to the business of the Federal government in the department of the Home Owners' Loan Corporation, which was sufficient excuse for the delay.

A noticed motion by respondent to dismiss the appeal, heretofore heard and passed to the decision on the merits, is also denied. It appears that an appeal bond was timely filed, after the appeal was taken, executed by Associated Indemnity Corporation, as surety, which respondent afterwards discovered to be the insurer of any liability incurred by appellants in such a case as this.

That company is authorized to do such business in this state as a surety company. It was not a party to the action, and no judgment was taken against it herein. The cases of *Smith v. Beard*, 21 Wash. 204, 57 Pac. 796, and *David v. Guich*, 30 Wash. 266, 70 Pac. 497, relied upon by respondent, are not apt for the reason that they were cases where private parties against whom judgments were entered and parties to the appeals also executed bonds as sureties on appeal. *Den Bleyker v. King County*, 108 Wash. 687, 185 Pac. 613, a case where a bond for security of costs had been ordered and given and where the statutes, Rem. Rev. Stat., §§ 495, 496 [P. C. §§ 7476, 8093c], required judgment to be entered against such surety upon such cost bond, is not applicable either. The motion to dismiss appeal for failure of appellants to furnish proper appeal bond is therefore denied.

This action was brought pursuant to Rem. Rev. Stat., § 183-1 [P. C. § 8260], for the wrongful death of respondent's decedent. It occurred on the Seattle-Tacoma paved highway on the afternoon of February 20, 1933, at the intersection of that highway with the Riverton Heights road. The action was prosecuted for the benefit of respondent, as the surviving spouse, and June Y. Hinton, the eight months old surviving daughter, of decedent. At the time of the fatality, Mrs. Hinton was twenty-one years of age, in good health, and had a life expectancy of 41.53 years. The jury awarded $7,500 to the surviving husband and $5,000 to the infant, a total of $12,500. This award to the husband also included about $330 necessarily expended for funeral and burial expenses.

The case made by respondent was substantially this: Decedent approached the Pacific highway between Tacoma and Seattle from a northeasterly direction on a gravelled road, which, as it approached the highway,

had an upgrade of about ten per cent until it reached the level of the highway and approached the highway at a very sharp or acute angle, very much less than a right angle. The paved portions of the highway are each twenty feet in width, with a narrow strip between the paved portions, and are almost level at the intersection of this gravelled road upon which decedent approached the highway. It is three per cent down grade north of the intersection. From the angle at which decedent approached the Pacific highway, almost latitudinally, she would have a clear vision to the left, without turning her head in that direction, for about one-half mile south on the highway. The jury was taken to the scene of the collision and observed all of the conditions and surroundings.

After decedent approached the highway, looking in the direction in which she was traveling, she hesitated, then proceeded to cross the most easterly half of the highway, which is a twenty-foot strip reserved exclusively for north bound cars. After she had reached a point approximately three feet from the center of the highway, or in other words had crossed about seventeen feet of the northerly bound strip of pavement, she was struck by a Ford roadster automobile being driven by Earl A. Carmody, Jr., with whom was riding his father, Earl A. Carmody, receiving injuries resulting in her death some hours later. The car driven by the Carmodys was being driven at the time at such speed that, after striking decedent, it veered across the pavement reserved for south bound traffic, and struck a south bound Tacoma stage, weighing five to seven tons, with such force as to knock the front end of the stage completely off of the highway and into a ditch at the westerly side thereof.

From the facts shown in the case, if decedent saw the automobile of appellants, she evidently believed

she had, and actually did have, ample time to cross its path; in consequence of which, after pausing at the edge of the pavement, she proceeded across the intersection and was struck by the automobile. It had ample room on the paved portion to have avoided her by passing to her rear, but did not. She was on foot.

The principal charge of negligence was the excessive speed of the car driven by appellants. Appellants affirmatively pleaded contributory negligence on the part of the decedent. There is also a charge of defective brakes made in the complaint and some evidence introduced concerning the matter. It was disclosed that the car belonged to R. P. Kauffman, who was joined as a defendant in the action. The jury found in favor of Kauffman, so that we have no further concern with him, nor the defective brakes, nor the instructions concerning the same.

Appellants timely challenged the sufficiency of the evidence and moved for a dismissal at the close of respondent's case, and at the close of the whole case moved for a judgment n. o. v., or for a new trial, which motions were denied.

Seventeen errors are claimed, which are argued under ten groups of error. Our determination of the whole case, however, on the law and the facts, will dispose of all of them.

There was evidence by a disinterested witness, a stage driver, who lived in the vicinity and saw the Ford car about half a mile before the collision, to the effect that the Ford car was then travelling greatly in excess of fifty miles an hour, and an admission by Carmody, Sr., to a highway patrolman, an hour or so afterward, that they were driving between fifty-five and sixty miles an hour and were in a hurry to get home. There was also evidence that it struck the Tacoma bound stage with such violence that this light Ford

roadster knocked the heavy stage off the highway and into the ditch on the west side.

Although there is some conflicting evidence on behalf of respondents, the credibility thereof and the probabilities as to their correctness, were for the jury to decide. *Eaton v. Hewitt,* 171 Wash. 260, 17 P. (2d) 906.

Being an affirmative plea, in the absence of evidence to the contrary, or unless from all the evidence the court can say that the contributory negligence of the person killed was so evident that reasonable minds could not differ thereon, the presumption is that such person exercised due care. *Eaton v. Hewitt, supra; Reinhart v. Oregon-Washington Railroad & Navigation Co.,* 174 Wash. 320, 24 P. (2d) 615; *Smith v. Seattle,* 178 Wash. 477, 35 P. (2d) 27; *Durham v. Crist,* 180 Wash. 213, 38 P. (2d) 1054.

It is plain that, under our decisions, there is ample and competent testimony to carry the question of negligence of decedent to the jury as a question of fact and could not be taken from the jury as a matter of law. The following types of cases, cited by appellants, *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, where the injured party was not killed but testified in the case that he looked but did not see the approaching automobile, and *Steinheim v. Nicholas,* 171 Wash. 614, 18 P. (2d) 836, a case tried to the court which found the pedestrian guilty of contributory negligence as a matter of fact and not as a matter of law, are not applicable to this case. Nor is *Shanley v. Hadfield,* 124 Wash. 192, 213 Pac. 932, where a pedestrian crossing a highway in front of an oncoming stage, after crossing its path and reaching a place of safety, suddenly stepped back again into the path of that car, too late to be avoided. Thus the major contention of appellants is unmeritorious.

Some other cases sustaining the right of respondent to recover under conditions similar to those shown here are *Romano v. Short Line Stage Co.,* 142 Wash. 419, 253 Pac. 657; *Hooven v. Moen,* 150 Wash. 8, 272 Pac. 50; *Cannon v. City Electric & Fixture Co.,* 158 Wash. 66, 290 Pac. 828.

Appellants also contend that it was error to permit testimony by witnesses as to the speed of their car twelve and one-half miles from the scene of the accident. A stage driver, who was driving a stage north from Tacoma to Seattle on the same side of the Pacific highway, testified that the car driven by appellants passed his stage at a place known as Kitt's Corner, which is about twelve and one-half miles from the scene of the accident, and was being driven by appellants at that point at about fifty to fifty-five miles an hour. This was rebuttal testimony given after the testimony of Carmody, Jr., to the effect that he was driving at a normal speed of about two or three miles either way of forty miles an hour. Carmody, Sr., also testified that the fastest speed the car made on the trip was when they were passing that stage, which was going at not to exceed twenty-five miles per hour; that those busses could not go over that rate on those grades, and that they pulled around him at possibly forty-five miles an hour. The bus driver testified that his average speed was forty-five miles per hour all the way from Kitt's Corner to the scene of the accident, and other witnesses testified that he arrived at the scene of the accident from five to ten minutes after its occurrence.

This testimony, in connection with the other testimony of the excessive speed at which the car of appellants was driven and the admission of Carmody, Sr., of having driven at a speed of from fifty-five to sixty miles per hour, the evidence of the stage driver, who

130

lived in that vicinity and saw him pass about half a mile south of the accident, that he was travelling very much in excess of fifty miles per hour, was all competent testimony. Its weight and probable force was, of course, for the jury.

In an action for death from injuries received in an automobile accident, evidence that defendant was proceeding at an excessive rate of speed when he passed a witness' car a mile and a half or two miles from the place of the accident is admissible when there is other evidence showing that he maintained at least as high a rate of speed over the intervening distance. *Wellman v. Mead,* 93 Vt. 322, 107 Atl. 396; *Wilson v. Fleming,* 89 W. Va. 553, 109 S. E. 810; *Sterler v. Busch,* 197 Iowa 231, 195 N. W. 369; *Stubbs v. Allen,* 168 Wash. 156, 10 P. (2d) 983.

The contention that the court erred in submitting to the jury instructions numbered 12, 14, 15 and 16, concerning defective brakes, is wholly unimportant, because the jury released defendant Kauffman, the owner of the car.

Appellants also stoutly contend that, by instruction numbered 21, the jury were given an incorrect rule as to the measure of damages.

Instruction 21, in effect, was that the jury should segregate the amount of damages given to each the surviving husband and the minor child, and in determining the amount to be awarded the minor child, the jury could take into consideration, as elements of damage, the loss of the love, care, guidance, training, instruction and protection, if any, which she sustained by reason of the death of her mother; that, in determining the amount to be awarded to the surviving husband, the jury could take into consideration, as elements of damage, the loss of love, affection, care, services, companionship, society and consortium, if any,

sustained by him by reason of the death of his wife; and also such sums, if any, that he with reasonable certainty may be obliged to pay in the future for the care of his infant daughter; and any sum that he has been obliged to pay for necessary funeral expenses, provided they are reasonable.

As has been noted, the action was brought under Rem. Rev. Stat., § 183-1 [P. C. § 8260], which, among other things, reads:

"In every such action the jury may give such·damages as, under all circumstances of the case, may to them seem just."

A somewhat similar instruction was approved by this court in *Aronson v. Everett,* 136 Wash. 312, 239 Pac. 1011, where decedent left a husband and two minor children, one three and another six years of age, the court instructing the jury that they might award recovery for any pecuniary loss which a fair preponderance of the evidence showed the minor children would sustain by reason of

". . . the loss of the care, protection, support, earnings, services and the physical, moral and intellectual instruction and training of the mother, which, under the evidence, she would have rendered them during the period of minority."

A case strangely overlooked, not cited even by respondent and very pertinent to this case, is *Woodbury v. Hoquiam Water Co.,* 138 Wash. 254, 244 Pac. 565. That also was an action brought by a husband for the wrongful death of his wife in which a verdict for ten thousand dollars, in addition to $275 for funeral expenses, was awarded, where it appeared that decedent and her husband were each thirty-nine years of age at the time of her death. They had been happily married nearly six years. She was in excellent health and had a life expectancy of 28.9 years. We there said that the

verdict was well within direct unopposed testimony of the value of her services.

In the instant case, decedent was very much younger than in that case and had a much longer life expectancy.

In an action for the wrongful death of plaintiff's husband, we held recently in *Davis v. North Coast Transportation Co.,* 160 Wash. 576, 295 Pac. 921, that loss of the society, protection and companionship of the husband may be submitted to the jury as an element of damage, in view of § 183-1, *supra,* providing that the jury may give such damages as under the circumstances may to them seem just.

Hence, it would be a waste of time to review and consider cases, largely under varying statutes, or the effect of Lord Campbell's Act, as discussed by appellants. The measure of damages submitted by the trial court, as to both the child and the surviving husband, were such as are taken cognizance of by law and, as long as not apparently exemplary or punitive, very liberally allowed under our statute. That contention is therefore untenable.

The complaint that instruction numbered 17, dealing with the presumption of due care on the part of the deceased person, was erroneous, is also without merit, in view of what we have said recently as to that presumption. See *Smith v. Seattle, supra,* and cases cited.

Finding no reversible error in the record, the judgment is affirmed.

MILLARD, C. J., BLAKE, MITCHELL, and STEINERT, JJ., concur.