[No. 26043.  *En Banc.*  August 8, 1936.]

LYDABELLE TRAINOR, *as Administratrix, et al., Appellants,* v. INTERSTATE CONSTRUCTION COMPANY, *Respondent.*[1]

*George F. Hannan,* for appellants.

*Eggerman & Rosling, W. S. Greathouse, Roberts & Skeel,* and *Frank Hunter,* for respondent.

MAIN, J.—This action was brought to recover for the death of Ziba B. Hoyt and for personal injuries to Mary E. Hoyt. The cause was tried to the court and a jury, and the defendant, before it was submitted

[1] Reported in 60 P. (2d) 7.

to the jury, challenged the sufficiency of the evidence and moved for a judgment in its favor, which motion was denied. The jury returned a verdict for the defendant, and the plaintiffs moved for a new trial. This motion was also denied. Judgment was entered dismissing the action, from which judgment the plaintiffs appeal.

The facts will be summarized only in so far as it is necessary to present the questions which are determinative upon this appeal. The Interstate Construction Company was a corporation and had a contract with the state for improving the highway between the cities of Ellensburg and Yakima. In performing this work, a steam shovel and trucks were made use of at one or more of the stations.

The accident which gave rise to this action occurred at about 10:30 o'clock a. m., October 20, 1931. Ziba B. Hoyt and Mary E. Hoyt, his wife, were the owners of an automobile and were proceeding from Ellensburg to Yakima, the automobile being driven by Mr. Hoyt. When they approached a section of the work where a shovel and trucks were being used, there was a flagman, and he directed that they proceed on through, two automobiles preceding them. For a distance of two or three hundred feet after leaving the flagman, there was but one lane for traffic. There were no cars following the three that went by the flagman closer, as Mrs. Hoyt testified, than about one-quarter of a mile back.

The soil in the vicinity of this portion was a light volcanic ash and, at the time of the year when the accident happened, was dry and dusty. From time to time during the day, heavy gusts of wind would come up and would carry the dust across the highway to such an extent as to destroy the visibility of the road

ahead of one driving an automobile. After Mr. and Mrs. Hoyt passed the flagman, they proceeded to the steam shovel which was a short distance beyond, at a speed of four or five miles an hour. At about the time they reached the steam shovel, the road ahead became completely obscured by dust. Mrs. Hoyt says that this dust was produced by the steam shovel dropping a bucketful of dry, light dirt near the automobile, a part of which entered the car through the open windows. Mr. Hoyt then shifted the automobile into low gear and proceeded at a very slow speed.

At this point, there was a slight turn in the road to the left, which the engineer said was a six degree curve. To the right, there was a slope or bank. After proceeding, as Mrs. Hoyt says, from twenty-four to not more than fifty feet, and as other witnesses say, from fifty to seventy-five feet, the automobile came to the edge of the bank and toppled over, as the result of which Mr. Hoyt sustained injuries from which it is claimed that he died on April 4, 1932, though the injuries, at the time of the accident, were considered slight. Mrs. Hoyt sustained the injuries for which she seeks recovery.

Before reaching the flagman, for a number of miles, there were danger signs from place to place along the highway, calling attention of automobile drivers to the fact that trucks were working or that road construction work was being performed. As to the manner in which the accident happened, Mrs. Hoyt testified:

"Q. Steam shovel? A. Yes; up onto the steam shovel and as we came up to this steam shovel it dumped, and came right into our car—not the dirt, but the dust from that shovel which blinded us and as we travelled on then Mr. Hoyt shifted in low and we travelled on and I said, 'Stop, Dad.' He said, 'We can't do that.' . . . Q. I will ask you a question right here, Mrs. Hoyt. You said that the shovel dumped a

shovelful of earth? A. Yes. Q. Mrs. Hoyt, did you see that shovel dump the shovelful of earth? A. I did. Q. All right. A. I did. Q. Now then, after the shovel dumped the shovelful of earth, Mr. Hoyt shifted into low, did he? A. He did. Q. All right, and then you went on a little distance, didn't you? A. We did. Q. And what did you say? A. Well — . . . 'Dad, we should stop the car.' He says, 'No; we can't stop. There will be another car coming and there will be an accident.' By that time I was trying to pull down my window and I glanced out, possibly we might have went a couple lengths of the car I wouldn't say, but during that time—and I glanced out of the window and I said, 'My God, Dad! We are right on the bank.' And as I said that to him he shut off the ignition and it was only a second or two until we were over. Q. I will ask you if this cloud of dirt that came on completely obstructed the visibility of that road? A. It did.''

Other witnesses who were present at the time say that the visibility of the road was destroyed by a heavy gust of wind bringing across the road the light volcanic ash soil. Whether the visibility of the road was completely obstructed by the dropping of the bucket of earth, to which Mrs. Hoyt testified, or was produced by the wind, is immaterial in the view that we take of the case. After the road became invisible, the car, instead of following the slight curve, went straight ahead until it went over the bank.

The question to be first considered is whether Mr. Hoyt was guilty of contributory negligence, as a matter of law, in not stopping his automobile when the visibility of the road was completely destroyed. The general rule is that, when this condition exists, it is the duty of the driver of the automobile to stop. *Hammond v. Morrison,* 90 N. J. L. 15, 100 Atl. 154; *Greenland v. Des Moines,* 206 Iowa 1298, 221 N. W. 953; 3-4 Huddy, Cyclopedia of Automobile Law (9th ed.), p.

243; 1 Blashfield, Cyclopedia of Automobile Law and Practice, p. 583.

In *Jaquith v. Worden,* 73 Wash. 349, 132 Pac. 33, 48 L. R. A. (N. S.) 827, it was held that, where the driver of an automobile was so blinded by a street car light that he could not see ahead, it was his duty to stop. It was there said:

"Under his own testimony he was guilty of most pronounced negligence. He was proceeding in utter disregard of the presence of other travelers or objects ahead of him. Had he been without eyes or had he closed them, he would have been in no worse position. To proceed at all in the face of those conditions was at his peril."

In the recent case of *Eldredge v. Garrison,* 184 Wash. 687, 52 P. (2d) 1240, it was held that the driver of an automobile was guilty of contributory negligence, as a matter of law, because he did not slow down or stop when his vision was obscured by a heavy fog. It was there said:

"The driver of an automobile proceeding through fog must note all matters which must be considered from the standpoint of the maintenance of due regard for his own safety and that of others  Such an atmospheric condition frequently causes, and even requires, vehicles to stop on the highway, and the possibility of such a situation is always present and must be weighed in determining that rate of speed which is reasonable, under the conditions."

The evidence in the case now before us was more potent in establishing the contributory negligence of Mr. Hoyt, as a matter of law, than was the evidence in the case last referred to.

It follows that it must be held that Mr. Hoyt was thus guilty of contributory negligence, unless the fact that he subsequently died gave the appellants a right to rely on a presumption of due care which arises

when one has been killed in an accident. The presumption that exists in such a case is not evidence, but will serve in the place of evidence until it has been overcome by evidence introduced upon the trial, and it may be overcome by the direct testimony of disinterested witnesses, but is not overcome by the testimony of interested witnesses. *Reinhart v. Oregon-Washington R. & N. Co.,* 174 Wash. 320, 24 P. (2d) 615.

In the case of *Spokane County v. Great Northern R. Co.,* 178 Wash. 389, 35 P. (2d) 1, it was held that the presumption of due care was overcome by the testimony, as a matter of law. It was there said:

"The authority relied upon by appellant and others to like effect are not controlling here, because in this case several witnesses testified that they saw Mr. Sharkey approach the track and observed him up to the moment of the accident. Under the evidence in the case at bar there is no room for the application of the rule as to the presumption of due care. This case rather falls within the rule laid down in *Woolf v. Washington R. & Nav. Co.,* 37 Wash. 491, 79 Pac. 997, and *Carlson v. Seattle,* 175 Wash. 388, 27 P. (2d) 717."

In the case of *Karp v. Herder,* 181 Wash. 583, 44 P. (2d) 808, it was held that the presumption of due care was not overcome by the testimony, as a matter of law, but the question was one for the jury. It would thus appear that whether the presumption was overcome as a matter of law or is a question of fact for the jury, must depend upon the facts of the particular case.

There is nothing in the case of *Hinton v. Carmody,* 182 Wash. 123, 45 P. (2d) 32, out of harmony with the cases just cited.

In the case now before us, as above appears, Mrs. Hoyt, who, as plaintiff in one cause of action, was seeking damages for injuries which she sustained, and

148

as a beneficiary under the other cause of action, testified in detail to exactly what Mr. Hoyt did from the time they left the flagman until the time of the accident. Under such a situation, the presumption of due care must give way to the definite testimony, and this case falls within those cases which hold that the presumption is overcome as a matter of law.

The appellants' motion for a new trial was in part, at least, based upon newly discovered evidence. But there was no error in the ruling of the trial court upon this phase of the case, for two reasons. In the first place, the court did not abuse its discretion in denying the motion, and, in the second, if the evidence were produced which the affidavit indicates could be, it would not call for a different holding upon what we deem the controlling question, that of contributory negligence.

The judgment will be affirmed.

MITCHELL, HOLCOMB, BEALS, BLAKE, and GERAGHTY, JJ., concur.

MILLARD, C. J., TOLMAN, and STEINERT, JJ. (concurring)—We concur upon the theory that the jury was justified in its finding that there was no negligence on the part of the respondent.