[No. 20017. *En Banc.* December 29, 1926.]

EDITH M. GLICK MOREHOUSE, as *Executrix, Respondent,* v. CITY OF EVERETT, *Appellant.*[1]

[1] APPEAL (475)—SUBSEQUENT APPEALS—FORMER APPEAL AS LAW OF CASE—QUESTIONS CONCLUDED. The refusal to grant a nonsuit upon a former appeal because of failure to file a claim against the estate becomes the law of the case on a second appeal, where the question was directly and ·necessarily involved in the former appeal.

[2] SAME (475). The decision on a former appeal, upholding an order granting a new trial, necessarily held that there was evidence sufficient to go to the jury on the question of plaintiff's contributory negligence, and is conclusive upon that point upon the second appeal upon the same evidence.

[3] MUNICIPAL CORPORATIONS (469)— STREETS—OBSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The failure of the driver of an automobile, injured in colliding with an obstruction in a street, to drive "within the radius of his lights" at night, i. e., so as to be able to stop his car within the clear range of his vision, is not contributory negligence as a matter of law, especially in view of the law requiring red lights as a

[1]Reported in 252 Pac. 157.

warning of danger and the prevalence of frequent fogs; and where the lights were placed at the sides of the street indicating a clear road in the center, the court will not say that a doctor, answering an emergency call on a foggy night, was guilty of contributory negligence as a matter of law, in running into an unguarded obstruction in the center of the street.

[4] SAME (470)—ACTION FOR INJURIES—WARNING SIGNALS OR LIGHTS—INSTRUCTIONS. In an action for wrongful death, caused when deceased collided with an obstruction in the street, it is prejudicial error to charge, after an admission that the city placed no barriers guarding the obstruction, that, if the failure to erect barriers was the proximate cause of the death the plaintiff was entitled to recover unless the deceased had been guilty of contributory negligence.

[5] SAME (470). In such an action, it is error to instruct that the duty of the city requires a "higher" degree of care in the case of streets which bear a heavy burden of traffic than in a case of little frequented streets.

[6] SAME (442)—CONTRIBUTORY NEGLIGENCE OF PERSON INJURED—CONSTRUCTIVE NOTICE. The fact that a person had knowledge of an obstruction in a street is not conclusive evidence of contributory negligence in colliding with the obstruction.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered January 23, 1926, upon the verdict of a jury in favor of the plaintiff in an action for wrongful death. Reversed and remanded for new trial.

*O. Duncan Anderson,. and J. W. Dootson,* for appellant.

*Wm. A. Johnson,* for respondent.

BRIDGES, J.—Grand avenue runs from a residence section to the business portion of the city of Everett. Prior to March 11, 1924, the city had given some persons permission to move a dwelling along that street. By night of the day mentioned, they had the building at a point on the avenue nearly midway between Everett avenue and 26th street, where they left it dur-

ing that night. It had large sills under it, which were supported at either end on cribbing. It occupied practically the whole of the paved portion of the street, which pavement was from curb to curb. The lower portion of the sill on which the house rested was some four feet above the pavement. There was a red light placed on the building or cribbing at each end near the curb, thus leaving a space, equal to nearly the width of the street, where there were no lights of any kind. At about ten or eleven o'clock of the evening in question, Dr. Morehouse, who was a practicing physician in Everett, together with his wife, was going northerly on Grand avenue from downtown towards their home. At that time, they saw the building in the street, and detoured. At about three or four o'clock of the morning of the same night, the doctor was called from his bed by telephone and requested to attend an emergency case of sickness. Complying therewith, he arose, got into his automobile, started south on Grand avenue, and ran into the building in question. At the time of the collision, he was traveling in about the center of the paved portion of the street, which was forty feet in width. The sill on which the building rested struck and cut off the radiator cap of his machine, and then the lower portion of the sill hit the swelled portion of the motor hood and the cowl, thus driving the steering wheel backwards, and killing the doctor at once. It is conceded that there was more or less fog at the time of the accident, which interfered to some extent with clear vision. There were no eye witnesses to the accident. The jury brought in a verdict for the plaintiff, and judgment being entered thereon, the city has appealed.

This case has previously been before this court. *Morehouse v. City of Everett,* 136 Wash. 112, 238 Pac.

897. At that trial there was a verdict for the defendant. The trial court granted a new trial, and the city appealed. This court sustained the order granting the new trial.

[1] The charter of the city of Everett has a provision requiring persons having claims for damages for personal injuries to present the same to the city within a certain time, and therein give certain designated information. This provision is substantially the same as that contained in the charter or ordinances of other cities. The claim in this instance was filed by the respondent while she was *special* administratrix of the estate of the deceased. It is contended that a special administratrix has no power under the statute to file such a claim, and in that respect we are referred to Rem. Comp Stat., §§ 1451 and 1453, [P. C. §§ 9999 and 10001].

We think this question is foreclosed by the former appeal. It is true, that the question was not discussed in the opinion rendered in that appeal and may not have been presented in the briefs, but it was directly involved, for there it was contended that the motions for non-suit and for judgment notwithstanding the verdict should have been granted. If there was no lawful claim filed with the city, then the evidence was insufficient and the court in that trial should have dismissed the case for want of sufficient evidence instead of granting a new trial as it did. In *Dennis v. Kass & Co.*, 13 Wash. 137, 40 Pac. 540, we said:

"The point is now made by the appellants that the complaint does not state facts sufficient to constitute a cause of action. This is the same complaint upon which the former case was tried, and if it does not state facts sufficient to constitute a cause of action, that question should have been raised upon the former trial. . . . If this complaint does not state a cause of action now,

it did not at the time the appellants moved for a nonsuit at the first trial, and that question should have been determined, . . ."

In many cases we have held that questions determined on a previous appeal, or which, being involved, might have been determined had they been presented, will not be considered on a second appeal of the same action, particularly where the pleadings and the testimony are substantially the same in each trial, as was the case here. *Buell v. Park Auto Transportation Co.*, 138 Wash. 678, 244 Pac. 992; *Toadvine v. Northwest Trust & State Bank,* 128 Wash. 611, 224 Pac. 22; *State ex rel. Nicomen Boom Co. v. North Shore Boom & Driving Co.,* 62 Wash. 436, 113 Pac. 1104; *Smith v. Seattle,* 20 Wash. 613, 56 Pac. 389. The foregoing are only a few of our cases on this question. We do not deem it necessary to cite more of them, because they are all to the same effect.

The question now raised was directly and necessarily involved in the former appeal, and, since we there refused to grant a non-suit or give a judgment notwithstanding the verdict, we must now hold that the question under discussion was disposed of in the former appeal.

[2] It seems to be conceded that there was sufficient evidence concerning the negligence of the city to justify the case being sent to the jury, but the appellant elaborately argues that its motions for non-suit and for judgment notwithstanding the verdict should have been granted because of contributory negligence on the part of the deceased. We think the previous appeal laid down the law in this respect contrary to appellant's contention.

At the first trial, the jury brought in a verdict for the city, and it appealed to this court from an order

of the trial court awarding the plaintiff a new trial. The pleadings at both trials were the same, and the evidence in each trial was to all intents and purposes the same. In the former appeal one of the questions raised was that the trial court erred in granting a new trial, because the evidence showed, as a matter of law, that the respondent ought not to recover because of his contributory negligence. In other words, there was involved in the former appeal the identical question here raised. Of course, for us to sustain the order of the lower court granting a new trial, it was necessary that we should consider whether there was any case which the court could send to the jury. In our opinion there we said:

"Of course, if we could see that the verdict of the jury was, as a matter of law, the only verdict that could be rendered [one for the defendant], as is suggested but seemingly not seriously argued, it might still be said that respondent should not have been awarded a new trial. We have reviewed the evidence with some care in this behalf, however, and are quite convinced that the case could not have been properly so disposed of by the trial court."

Not only, therefore, was this question of contributory negligence raised in the former appeal, but it was actually decided by us adversely to the city.

In the case of *Perrault v. Emporium Department Store Co.*, 83 Wash. 578, 145 Pac. 438, there was a verdict for the plaintiff and a new trial awarded on the defendant's motion. We said:

"In an unbroken line of decisions we have consistently held that questions determined on appeal, or which might have been determined had they been presented, will not be considered upon a second appeal of the same action. As to such questions the first appeal conclusively settles the law of the case."

To the same effect, see *Hoffman v. Watkins,* 89 Wash. 661, 155 Pac. 159; *Scribner v. Palmer,* 90 Wash. 595, 156 Pac. 531. Many other of our cases to like effect are cited in those just mentioned.

The trial court having granted the plaintiff a new trial after the jury had returned a verdict for the defendant, it follows that, in upholding the order granting the new trial, we necessarily held that there was evidence sufficient to go to the jury on the question of contributory negligence.

[3] But if it should be conceded that the former appeal does not fix the law on this question, and we consider the matter only in the light of the facts here shown, we are of the view that there was sufficient evidence to carry the case to the jury on the questions of appellant's negligence and the deceased's contributory negligence. In this connection, and also in support of the argument that the court erred in refusing to give a certain requested instruction, which we will hereinafter notice, the appellant has forcefully and elaborately argued what has been stated as the "drive within the radius of your lights" rule. Since this case must be returned for a new trial because of errors hereinafter to be pointed out, and since the doctrine above stated seems to be involved in this case and was much discussed at the trial, we deem it proper to here express our views on the subject. This supposed rule of "drive within the radius of your lights" has been advanced in other cases in this court. It is here asserted, and has likewise been argued in other cases, that many of the courts have held that one driving an auto at night must, under all circumstances and as a matter of law, see whatever obstructions that are within the radius of his front lights, and must operate his car at such speed and have such control over it that

he can stop it before striking the obstruction, and that, under these circumstances, he cannot recover, even though the defendant has negligently placed the obstruction or barrier in the road, or, if he has lawfully placed it there, has negligently failed to give notice of its presence by placing thereon red lights or other proper or sufficient warning. If such a rule has been announced by other courts, we cannot follow it, for reasons which we will give after first reviewing some of the cases which are said to support it. The doctrine is supposed to have been first announced in *Lauson v. Town of Fond du Lac*, 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40. The plaintiff in that case sought damages by reason of defects in the highway. The court stated the question before it in this way:

"The question for this court to solve is whether the driver of an automobile who, on a dark rainy night, is traveling over a straight stretch of strange country road, is exercising ordinary care if he drives his machine at such a rate of speed that he is unable to stop within a distance that is within the clear range of his vision. Stated in another way, if he can see objects but 10 feet ahead, while he cannot stop his car in less than 20 feet, is he using ordinary care? If not, and injury results from his negligent act, neither he nor his passengers, if the conveyance be a private one, can recover damages for such injury."

Further on in the opinion the court says:

"It seems to us, and we decide, that the driver of an automobile, circumstanced as was the driver of the car in which the plaintiff was riding, and operating it under such conditions as he operated his machine on the night of the accident, is not exercising ordinary care if he is driving the car at such a rate of speed that he cannot bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him. If his light be such that he can see objects for only a distance of 10 feet, then he should so regulate his speed

as to be able to stop his machine within that distance; and, if he fails to do so, and an accident results from such failure, no recovery can be had.''

We seriously doubt whether this case, which is the leading one, supports the rule contended for. If this opinion means that one driving an automobile at night must, under all circumstances, see any object in the road in front of him which comes within the radius of his lights, and be able, under all circumstances, to stop his car before striking the object, then we are unable to agree with it. On the contrary, if it holds that he must see any object which an ordinarily prudent driver under like circumstances would have seen, then we think it states the law correctly.

In *West Const. Co. v. White,* 130 Tenn. 520, 172 S. W. 301, the court said:

''It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop or avoid any obstruction within the radius of his lights, or within the distance to which his lights would disclose the existence of obstructions.''

It may be this case supports the rule contended for by appellant. So, also, apparently, does the holding in the case of *Serfas v. Lehigh & New Eng. R. R. Co.,* 270 Pa. St. 306, 113 Atl. 370, 14 A. L. R. 791, where it was said that it was ''the duty of the driver of a car, driving on a dangerous highway on a dark, stormy night, to have his car under such control that he may stop or turn it away when objects intercepting his passage come within the range of the rays of light from his lamps.''

Other cases cited by appellant, which, it must be conceded, more or less support its view, are: *Spencer v. Taylor,* 219 Mich. 110, 188 N. W. 461; *Ott v. Wilson,* 216 Mich. 499, 185 N. W. 860; *Mathers v. Botsford,* 86

Fla. 40, 97 So. 282, 32 A. L. R. 881; *Raymond v. Sauk County*, 167 Wis. 125, 166 N. W. 29, 1918F L. R. A. 425; *Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317, 1917F L. R. A. 610; *Ham v. Los Angeles County*, 46 Cal. App. 148, 189 Pac. 462; Huddy on Automobiles, (5 ed.), p. 376. This last authority gives the rule as follows:

"One restriction on his speed is that he shall keep the machine under such control and operate it at such speed that he can stop the machine and avoid an obstruction or other traveler within the distance that the highway is illuminated by his lights."

The rule contended for is, in our opinion, entirely too broad, and, if put in effect, would have very serious and unjust results. It loses sight of the fact that one driving at night has at least some right to assume that the road ahead of him is safe for travel, unless dangers therein are indicated by the presence of red lights; it does not take into consideration the fact that visibility is different in different atmospheres and that at one time an object may appear to be one hundred feet away, while at another time it will seem to be but half that distance; it fails to consider the honest error of judgment common to all men, particularly in judging distances at night; it loses sight of the fact that the law imposes the duty on all autos traveling at night to carry a red rear light and the duty on all persons who place obstructions on the road to give warning by red lights or otherwise; it fails to take into consideration the glaring headlights of others and the density of the traffic, and other like things which may require the instant attention of the driver; it does not take into consideration that a driver at night is looking for a red light to warn him of danger and not for a dark and unlighted auto or other obstruction in the road. We believe that, generally speaking, where the statutes or the decisions of the courts require red lights as a warn-

ing of danger on any object in the highway and such lights are not present, it is a question for the jury to determine whether the driver at night should have seen the obstruction, notwithstanding the absence of red lights.

In this day, when the roads are crowded with automobiles, a red light is at once recognized as a signal for danger and therefore for cautious driving, but the absence of a red light, where the statutes or the decisions of the court require them, amounts to an implied invitation to travel the road in the usual manner. In many portions of this state fogs are frequent—fogs so thick that the driver of an automobile cannot, by means of his headlights, clearly distinguish an object five feet in front of him. Must he stop on the road? If so, all others must do the same, and thus all traffic must cease. And in the process of stopping and blocking the road, many collisions must occur. A rule that will force this condition is a dangerous one and must do infinitely more harm than good.

To hold that one is, as a matter of law, guilty of contributory negligence in not, under all circumstances, seeing whatever his lights may disclose, would be to practically nullify the statutes which require red lights to be carried upon automobiles and to be placed upon obstructions in the streets or roads; or, at least, to encourage travelers on the roads, or those placing obstructions therein, not to comply with the law in those respects, for, under the rule contended for, a disobedience of the law with regard to red lights would not entail any evil consequences.

The supreme court of Iowa has considered the *Lauson* case and those pretending to follow it, as announcing a doctrine very like that contended for by appellant, and has refused to follow. That court in the

case of *Owens v. Iowa County,* 186 Iowa 408, 169 N. W. 388, after reviewing those cases, says:

"We recently had occasion, however, to review these authorities and declined to adopt their holding. . . . If the duty is imposed upon the driver of an automobile to drive the same at such a rate of speed that it may always be stopped within the distance that objects, defects, depressions or obstructions in the highway may be clearly visible, the duty to provide barriers, lights, or warning to attract the attention of travelers upon the highway thereto would be so relaxed as to be easily avoided."

See *Kendall v. City of Des Moines,* 183 Iowa 866, 167 N. W. 684.

While the following cases are not directly in point, they tend to support the doctrine of the Iowa court: *Rozycki v. Yantic Grain & Products Co.,* 99 Conn. 711, 122 Atl. 717; *Seibert v. Goldstein Co.,* 99 N. J. L. 200, 122 Atl. 821; *Hatch v. Daniels,* 96 Vt. 89, 117 Atl. 105; *Brigden v. Pirozzi,* 97 N. J. L. 535, 117 Atl. 602; *Haynes v. Doxie,* 52 Cal. App. 133, 198 Pac. 39.

The facts of this case illustrate the dangers of the rule contended for. Here, the deceased was wakened from his sleep at four o'clock in the morning and asked to attend an emergency case of sickness. There was a considerable fog which interfered, at least to some extent, with his visibility. The building in the street was weatherbeaten and resembled to some extent the surrounding fog. Such red lights as there were had been placed on the building near the street curb, thus tending to indicate that the street itself was unobstructed. Under these circumstances, the court cannot say, as a matter of law, that the deceased was bound to see the building with the aid of his front lights and stop before striking it, and it was for the jury to determine whether, under the same or similar circumstances, a

reasonably prudent man, driving in a reasonably care-
ful manner, would have seen the building in time to have
stopped, even though there were no red lights on it to
give warning.

In previous cases, we have, in effect, refused to fol-
low the doctrine contended for. In *Ebling v. Nielsen,*
109 Wash. 355, 186 Pac. 887, the department opinion,
in a case somewhat similar to this, said:

"Then, under the test of ordinary care and pru-
dence, he was required to have his machine under such
speed and control, considering all the circumstances,
including any reasonable likelihood of skidding when
the brakes were applied, as would permit him to safely
handle his machine without a collision, after he could
and should have discovered the motor truck, indepen-
dent of the question of the sufficiency of the red light."

Subsequently, the court, sitting *en banc,* withdrew
the part quoted. *Ebling v. Nielsen,* 113 Wash. 698, 193
Pac. 569.

In *Devoto v. United Auto Transportation Co.,* 128
Wash. 604, 223 Pac. 1050, we said:

"It is urged that there was error in instructing the
jury to the effect that it was the duty of the driver of
the stage to drive at such a rate of speed as to enable
him to stop within the distance disclosed to his view
by his own headlights. In view of the evidence in this
case, we fear the rule laid down is so severe as to be
impracticable. One of the respondents testified to the
effect that the fog lay in banks or strips, in places not
so dense as to interfere with a reasonable view ahead,
but, proceeding, they came into places where the fog
was so dense that the white light of the headlights was
mirrored back to the driver and he could see nothing
in advance of his automobile. Under such conditions,
shall a driver stop in the fog bank until the fog clears?
If one does so, all must do so, or the danger would be
thereby increased; and if all stop, how shall anyone
reach his destination? It seems to us in reason that

traffic must be permitted to move on the highway at all times, but that, in driving through a fog bank, each driver must do so in a careful and prudent manner with due regard for the safety of others, and what is careful and prudent under the particular conditions shown will usually be a question for the jury.''

In the case of *Colvin v. Auto Interurban Co.*, 132 Wash. 591, 232 Pac. 365, it was claimed that an instruction given by the court was in accordance with the rule here contended for. We determined that the instruction was not of that character, and said, in substance, that if it had been, then a very important and interesting question would have arisen.

When this case was here on the previous appeal, while we did not particularly discuss the rule contended for, we in effect denied its application, because otherwise it would have been necessary for us to have held that the plaintiff could not recover because the deceased failed to see the house located in the street.

It is with regret that we are unable to follow what appears to be the weight of authority on this important question. For more than five years past we have had this question before us in various forms and cases. We have, therefore, reached our conclusion with caution and after much deliberation.

[4] It is next claimed that instruction No. 5 does not state the law. It is too long for us to quote in full. It starts out by saying that ''a person traveling upon a street of a city has the right in the first instance to assume that the street is reasonably safe for travel,'' and if a city permits a dangerous condition to arise, it must use reasonable care to guard it with such barriers or red lights or otherwise as shall be reasonably necessary; and closes with the following:

''It is admitted in this case that no barriers were erected to protect traffic on Grand avenue from collision

with the obstruction, and if you find that the failure to erect barriers was the proximate cause of the death of the deceased, or if you find that the defendant failed to so place warning lights upon the obstruction as a reasonably careful man would have placed them and that such failure was the proximate cause of the death of the deceased, the plaintiff is entitled to a verdict, unless you should believe from all the evidence bearing thereon that the negligence of the deceased himself contributed to cause his death."

After much consideration, we have concluded that this instruction is not only erroneous but that we cannot say that the jury was not misled by it. Whether it was necessary to place barriers in the street in addition to, or in the place of, red lights on the building, was a question for the jury. It is the duty of a municipality, when obstructions are placed in a street, to use such means as are reasonably necessary to warn those using the street of the presence of the obstruction, and it is for the jury to determine what means of warning are reasonably necessary under the facts of the particular case. As stated by the court in the instruction given by it, it was admitted at the trial of this case that the city had not closed the street with barriers, and, in the face of that admission, the court tells the jury that if the failure to erect barriers was the proximate cause of the death, then the plaintiff was entitled to recover, unless the deceased had been guilty of contributory negligence. If the street had been closed with barriers, the deceased could not, of course, have driven his machine into the house. Consequently, the failure to erect barriers and thereby close the street to traffic was, at least, one of the proximate causes of the death of Dr. Morehouse. This instruction comes very nearly telling the jury that barriers were necessary under the circumstances of this case, and, since it is admitted that there

were no barriers, then the respondent was entitled to recover, unless the deceased was guilty of contributory negligence.

[5] The appellant complains of instruction No. 3 given by the court, which reads as follows:

"The duty of a city with regard to the safety of its streets is to exercise ordinary care, that care which an ordinarily careful person would use to keep them safe for ordinary travel.

"That duty requires a higher degree of care in the case of streets which bear a heavy burden of traffic than in the case of little frequented streets, and in any case is such care as is reasonable under all circumstances.

"It is also the duty of the city to use reasonable care, in the light of all conditions, to see that no dangerous condition is created in its streets by its own act or under its permission."

The first and third sentences probably correctly state the law, but that portion, which "requires a higher degree of care in the case of streets which bear a heavy burden of traffic than in the case of little frequented streets," is erroneous. This question is controlled by the rule of reasonable or ordinary care, or such as a reasonably careful or prudent person would exercise under like circumstances. What would be reasonable care under one set of facts might not be reasonable care under another set of facts, but the difference would not be in the degree of care to be used, but rather in the amount of care.

"It should always be kept in mind that the *degree* of care never changes, but that the *amount* of care which must be used to constitute ordinary or reasonable care varies according to the circumstances of the particular case, unless otherwise provided by statute." McQuillin's Municipal Corporations, p. 5602.

If the instruction had read that it was the duty of the city to use "a greater amount of care in the case of streets which bear a heavy burden of traffic than in the case of little frequented streets," the instruction would have been correct.

[6] It is claimed that the court erred in refusing to give the following instruction requested by appellant:

"You are instructed that it was the duty of Dr. Cecil G. Morehouse, at the time and place mentioned in the complaint, to operate the automobile he was driving at such speed and have it under such control as that by exercising reasonable care he could stop it before striking the building after he could or should, by the assistance of his headlights, have seen the building in the street ahead of him; you are further instructed that, if at the time and place mentioned in the complaint, the said Dr. Cecil G. Morehouse was driving at such a rate of speed, or that he did not have the automobile he was driving under such control that by the exercise of reasonable care and with the assistance of his headlights he could stop the automobile before striking the building in the street ahead of him, then he was guilty of contributory negligence and your verdict must be for the defendant, if such negligence contributed to his death."

This requested instruction neither follows the "drive with reasonable care" rule nor the rule, "drive within the radius of your headlights." It is a combination of both theories. Although somewhat unhappily worded, the first portion of the instruction may not have erroneously stated the substance of the first rule as applied to the facts of this case, but the second portion goes much further and comes very nearly, although not quite, stating the second rule mentioned. This case is controlled by the familiar rule of ordinary care.

**[7]** It is next claimed, but little argued, that the court erred in refusing to give the following request:

"You are instructed that there is evidence in this case that the decedent, Cecil G. Morehouse, had previous knowledge of the existence in Grand avenue, on the night of his death, of the obstruction complained of, which previous knowledge, under the facts presented to you in this case, continued up to the time of the accident."

Instruction No. 6 given by the court was to the effect that the fact that a person injured by an obstruction in the street had previous knowledge of that obstruction "is not in itself conclusive evidence of negligence upon the part of the person injured, but should be taken into consideration with all the conditions in the case, including barriers or lack of them, lights or lack of them, weather conditions, the action of the traveler himself, his right to assume that the street is safe in determining whether or not, under all the circumstances, the person injured exercised that degree of care which an ordinarily prudent person would have exercised under the same conditions." We think the instruction given by the court correctly stated the law, and that the requested instruction did not so do.

Without particularly presenting the questions, suffice it to say that we think the ruling of the court with reference to the testimony of William F. Healy, and with reference to the pecuniary gain to the plaintiff by reason of the death of Dr. Morehouse, was correct.

This case having already been twice tried, it is with regret that we find it necessary to remand it, as we do, for a new trial.

TOLMAN, C. J., MACKINTOSH, PARKER, FULLERTON, MAIN, HOLCOMB, and ASKREN, JJ., concur.