[No. 25823.    Department Two.    December 16, 1935.]

EUGENE L. ELDREDGE *et al., Appellants,* v. ROY GARRISON *et al., Respondents.*[1]

*Kahin & Carmody* and *Orlo B. Kellogg,* for appellants.

*N. A. Pearson* and *Floyd M. Reischling,* for respondents.

BEALS, J.—Plaintiffs, Eugene L. and Florence Eldredge, sued for damages based upon personal injuries and property damage suffered by them as the result of an automobile accident occurring on the Pacific highway a few miles north of Seattle, between ten and eleven o'clock on the morning of November 11, 1933.

The highway consists of two paved strips, each twenty feet in width, separated by four feet of gravel. At the place the accident occurred, the highway slopes

[1]Reported in 52 P. (2d) 1240.

slightly down grade toward the north; and on its easterly side is a dirt shoulder approximately eight and one-half feet in width, to the east of which is a ditch between two and three feet wide. The defendants were engaged in hauling, by truck, sections of ten-inch cast iron water pipe, sixteen feet long, which were to be laid beside the highway. On the morning of the accident, the weather was foggy, the fog in some places being light, and again lying over the road in thick banks.

It appears that two of defendants' trucks, proceeding northerly along the highway, carrying the sections of iron pipe, had stopped for the purpose of unloading, at least one of the trucks standing on the pavement at approximately the center of the easterly roadway. The iron pipe with which it was loaded projected between three and five feet beyond the rear of the truck. Upon halting his vehicle, the truck driver placed, facing south, upon the middle of the strip of pavement, at a point about thirty-five feet south of the truck, a wooden frame, in height three feet or a little more and variously estimated as from fourteen to twenty-four inches wide, to which was attached a piece of red cloth not less than fourteen inches from top to bottom and extending across the top of the frame.

Plaintiffs, Mr. Eldredge driving, were proceeding along the highway in a northerly direction in their 1927 Chevrolet coupe. Mr. Eldredge testified in detail to the effect that his car was in excellent condition, its tires were good, its brakes were in first-class shape, the windshield swipe was functioning perfectly, and the headlights were turned on.

Just before the accident, plaintiffs, as they testified, were proceeding down the gradual slope at a speed of from eighteen to twenty miles per hour, Mr. Eld-

redge testifying that he was keeping a careful lookout ahead and toward the right-hand margin of the pavement. He testified that, in passing, he observed the wooden frame carrying the red cloth, but thought it was merely "a sack, or a shoe box, or a hat, or something like that." He stated that, nevertheless, on passing this object he applied his brakes lightly.

In another instant, he thought that he saw through the fog a large object on the road ahead of him; that the fog was in motion, and he thought that what he saw was a car moving along in the same direction in which he was proceeding; that, immediately thereafter, he found himself close to the standing truck, which was in the road so far from the easterly margin thereof that he did not have room to turn to his left; and that, not having time to stop, he turned his car to the right, driving out on to the shoulder of the road, where he struck a piece of the iron pipe which had been unloaded, the impact turning his car over, with the result that Mrs. Eldredge was severely injured, Mr. Eldredge hurt, and the car so badly damaged that its market value was almost entirely destroyed. Mr. Eldredge testified that there was no light on the truck, and that, when he finally saw the same and appreciated the situation, it was too late to stop his car, and the only alternative presented to him was to seek safety by swerving to the right.

The action was tried to the court, sitting with a jury, which returned a verdict in favor of defendants. From a judgment of dismissal entered upon this verdict, plaintiffs have appealed. Defendants, at appropriate times, moved, first, for a nonsuit and judgment in their favor as matter of law, and, later, at the close of the case, challenged the sufficiency of the evidence and moved that the case be taken from the jury and judgment of dismissal entered, upon the ground that,

from the evidence, it appeared that plaintiffs had been guilty of such contributory negligence as would bar any recovery in their favor.

Appellants assign error upon the striking of a portion of the testimony of one of their witnesses, upon the giving of three instructions, and upon the refusal to give one of their requested instructions. Respondents contend that, under the evidence, the court should have held, as matter of law, that plaintiffs were guilty of contributory negligence, and that no judgment other than one in favor of respondents can stand. Our opinion upon this latter phase of the case renders any consideration of appellants' assignments of error unnecessary.

In our discussion of the evidence, we shall, of course, accept that view thereof most favorable to appellants, and we assume, without deciding, that respondents were negligent in stopping the truck upon the highway.

Mr. Eldredge testified that his car was in excellent condition; that he was driving at from eighteen to twenty miles per hour; and that he could have stopped within about twenty-eight feet, or two car lengths. He further testified that he was driving approximately four feet from the right-hand edge of the pavement; that the wooden frame carrying the red cloth, because of the foggy condition of the atmosphere, could not have been seen from more than twenty-five or thirty feet south of its position on the pavement. The witness, however, definitely stated that the red cloth was visible for that distance to one approaching it from the south. He further stated that he merely noticed it as he passed by, testifying:

"A. Well, just as I got approximately to or possibly abreast of Liebe's house as I was driving along there I just noticed something that I passed by. It was standing out in the middle of the street, and I noticed

that I had passed something. I couldn't tell what it was. It might have been a sack or a shoe box, or a hat, or something like that. Q. Which way were you looking as you drove along? A. I was watching the edge of the pavement and ahead. Q. Which edge of the pavement were you watching? A. I was watching the right-hand side."

The frame carrying the red cloth was of reasonable size to attract attention. How anyone could have seen this danger signal and mistaken it for a sack, a shoe box, or a hat, is difficult to understand. It is a matter of common knowledge that such frames bearing a piece of red cloth are commonly used on highways as warnings of danger ahead. Mr. Eldredge, apparently to excuse his failure to observe the signal, states that he was keeping a lookout ahead and toward the right-hand edge of the pavement. Manifestly, if he had been keeping a proper lookout ahead, he would have seen the danger signal in time to have acted thereon. While it is true that, in driving through a fog, it is often advisable to observe the right-hand edge of the pavement, it is also necessary that the driver maintain a careful observation of the road ahead, and such observation should include that portion of the pavement upon which the danger signal stood, which Mr. Eldredge testified could have been seen thirty-five feet before he reached it. Clearly, the signal did make some impression upon the driver, as he testified that as he passed it he slightly applied his brakes.

Mr. Eldredge then thought that he saw something ahead of him, which he took to be a car moving along in the same direction in which he was proceeding, and that the next thing he knew saw that he was close to the truck, without room to turn to its left, and that he then quickly made the turn to his right, which resulted in the collision with the iron pipe which was

lying on the ground. The witness stated that he was at least twenty-five feet from the truck when he first saw it. He had previously testified, as above stated, that he could have stopped his car in two lengths, or about twenty-eight feet. Mr. Eldredge testified that, at the top of a hill about one-half mile south of the scene of the accident, the fog was not so thick, and that he could see approximately one hundred feet ahead of him; that, as he proceeded down the hill, the fog grew thicker, and that his vision was limited to forty or fifty feet; while, at the place of the accident, he could not see over forty feet ahead.

Undoubtedly, fog is one of the most dangerous conditions which can beset the driver of a motor vehicle. One driving through fog must exercise a very high degree of care. Fog is not a latent or concealed danger; it gives ample notice of its presence. The driver of an automobile proceeding through fog must note all matters which must be considered from the standpoint of the maintenance of due regard for his own safety and that of others. Such an atmospheric condition frequently causes, and even requires, vehicles to stop on the highway, and the possibility of such a situation is always present and must be weighed in determining that rate of speed which is reasonable, under the conditions. While a driver's attention, under the circumstances now under discussion, may properly be directed to the right-hand margin of the pavement, to be free from negligence a driver must proceed at no rate faster than one which will allow him to also carefully observe the roadway in front of him and devote such attention to the roadway as will allow him to observe anything resting thereon in time to take appropriate action.

All of the circumstances indicate that Mr. Eldredge was driving faster than he admitted; but, taking his

own testimony at its face value, it must be held that, the conditions being as he testified they were, both as to the fog and the excellent condition of his car, he was guilty of negligence which certainly materially and proximately contributed to the accident.

In this connection, the case of *Meyer v. Miller, ante* p. 393, 50 P. (2d) 1018, is of interest, although it did not appear in that case that the visibility was lessened because of the presence of fog.

It may be noted that the testimony of Mr. Eldredge is not at all convincing. He testified more than once that the frame bearing the red cloth could be seen from a point thirty-five feet south thereof, but he stated that he did not notice it, save as some small object lying in the road. One of appellants' witnesses stated that, at the time of the accident, he could see the outline of the truck from a distance of sixty feet, while Mr. Eldredge did not observe it until he had approached within twenty-five feet thereof.

Mrs. Eldredge was called as a witness on behalf of appellants, but testified to nothing of importance, save possibly the fact that she was closely watching the easterly margin of the roadway.

Appellants were driving under very dangerous conditions, which required the continuous exercise of a very high degree of care. The brakes of his car being in fine condition, Mr. Eldredge could certainly have stopped, as he said, within two car lengths, and probably within less, assuming that the car was moving at not more than twenty miles per hour; and the slight application of the brakes, to which he testified, should have reduced the speed of the car at least to some extent. Mr. Eldredge failed to observe or heed the warning signal. Either he did not have his car under proper control, in view of the conditions, or he failed to exert any such control. If the visibility was as

poor as he testified it was, then he certainly exercised less than the degree of care required of a reasonably prudent driver, under the circumstances.

It must be held, from the evidence introduced by appellants, and particularly from the testimony of Mr. Eldredge himself, that he was guilty of contributory negligence which proximately and materially contributed to the damages suffered by appellants. This being the case, no verdict in favor of appellants could stand, and whether or not the instructions given to the jury by the trial court were in all particulars correct is immaterial. Consideration of the evidence which the trial court withdrew from the consideration of the jury, of which ruling appellants complain, no wise affects the conclusion which we have reached, and for this reason that assignment of error need not be discussed.

As, under the law, no judgment other than a judgment of dismissal could have been entered, the judgment appealed from is affirmed.

MITCHELL, BLAKE, MAIN, and HOLCOMB, JJ., concur.