[Nos. 34316, 34317.  Department Two.  December 26, 1957.]

CORAL WINES, *Respondent,* v. ENGINEERS LIMITED PIPELINE COMPANY, *Appellant.*

HENRY V. LITTLE, *Respondent,* v. ENGINEERS LIMITED PIPELINE COMPANY, *Appellant.*[1]

[1]Reported in 319 P. (2d) 563.

488

*Hullin & Ehrlichman,* for appellant.

*Pemberton & Orloff* and *Brown & Millhouse,* for respondents.

DONWORTH, J.—This appeal involves two independent suits, arising out of a single automobile collision, consolidated for the purposes of trial and appeal. These actions were tried before the court sitting with a jury and resulted in verdicts and judgments in favor of each respondent.

Respondent Wines, the daughter of respondent Little, for several months prior to June 9, 1955, had been residing with her father at his home, located northeast of Bellingham near the intersection of Kelly (east-west) and Hannegan (north-south) roads.

Shortly before 8 o'clock p.m., on the date above mentioned, respondents left the Little home, intending to proceed east on Kelly road to a home less than one mile distant, where respondent Little, as member and paid construction superintendent, was to attend a meeting of a neighborhood water association. Respondent Wines was operating her Hudson automobile, with respondent Little riding beside her.

Kelly road had a dry graveled surface. Hence, it had no center stripe. About one thousand feet east of the Hannegan intersection, appellant had trenched, laid its north-south pipe line across Kelly road, and backfilled a ditch. At the pipe-line crossing, and farther eastward, Kelly road slopes, rising gradually to the east. It crests about one hundred

feet east of the crossing. The maximum lawful speed on Kelly road was stipulated to be sixty miles per hour.

After entering upon Kelly road, respondent Wines proceeded eastward from the Hannegan road, following a Dodge pickup. She, in turn, was followed by another automobile. Mrs. Wines' view of the roadbed ahead was completely obscured by the dust created by the preceding pickup, but she was able to see the back of the pickup (above the cargo box) and followed at a distance of about thirty to thirty-five feet.

Defendant Walter Rhode (who is not concerned with this appeal) was proceeding westbound on Kelly road in his Chevrolet coupe at about forty miles per hour. Somewhere east of the pipe-line crossing, he met and passed the oncoming pickup. He then entered the dust generated by the pickup and applied his brakes. He did not see the Wines' car until too late to avoid a collision, which occurred somewhere near the pipe-line crossing.

Respondents Wines and Little each sustained severe personal injuries, for which they commenced their respective actions for damages. In addition, respondent Wines sought damages for loss of earnings and the depreciation in the value of her automobile.

Respondents' respective causes of action were based upon the grounds of defendant Rhode's negligent operation of his automobile and appellant's failure to give adequate warning of the hazardous condition created by its obstruction of the roadway. Appellant denied negligence, and affirmatively alleged contributory negligence of each respondent, alleging, in particular, that Mrs. Wines was an agent of her father and that her contributory negligence is imputable to him.

■ As is not uncommon in suits of this nature, the testimony of the witnesses was in sharp conflict on many factual issues of vital importance. But, since these appeals are from judgments entered upon verdicts of a jury, we are required to view the evidence most favorable to the successful parties, and all such material evidence must be accepted as true. The verdicts must stand unless we can say, as a matter of law, that there is neither evidence nor reasonable

inference therefrom to sustain them. *DeYoung v. Campbell, ante* p. 11, 315 P. (2d) 629 (1957).

Having this rule in mind, the jury was entitled to believe that the following facts were established by the evidence:

In the vicinity of the pipe-line crossing, Kelly road was rough and rutty, with a pile of dirt of appellant's creation extending into the north (or westbound) lane of travel; that the north lane was obstructed by a barricade extending thereon to such an extent that traffic at the pipe-line crossing was reduced to but one lane of travel, that being the south (or eastbound) lane; that the point of impact was in the eastbound lane of travel, slightly over an automobile's length east of the pipe-line crossing; that Mrs. Wines' view, although somewhat impaired, was not wholly obscured; that her speed of twenty to twenty-five miles per hour under the circumstances then and there existing was not excessive; that she was proceeding cautiously, and had no reason to anticipate that defendant Rhode, or any other westbound motorist, after meeting the pickup truck preceding her, would, in an attempt to avoid the obstruction of appellant's creation, veer his automobile into the eastbound lane of travel.

Appellant first assigns error to the trial court's refusal to give to the jury its requested instruction, which reads, in part:

"You are instructed that under Washington statute the maximum speed is not always permissible under any and all circumstances, but every person operating or driving a vehicle upon the public highways of this State shall operate the same in a careful and prudent manner, and at a rate of speed no greater than is reasonable or proper under the conditions existing at the point of operation, so as not to unduly or unreasonably endanger the life, limb, property, or other rights of any persons entitled to the use of such public highways.

"In this connection, the law holds one negligent who fails to stop when his visibility is completely obscured by a cloud of dust.

"If you find from a fair preponderance of the evidence that, because of the condition which existed at the time of this accident, impairing or obscuring visibility, either driver

failed to exercise ordinary care, either by failing to stop or failing to travel at a safe speed, then such driver is negligent."

In support of this contention, appellant argues that its theory of contributory negligence should have been submitted to the jury. Respondents contend that the proposed instruction was inapplicable, because there was no evidence that the vision of respondent Wines was *completely* obscured.

■ The extent to which respondent Wines' vision was impaired or obscured by dust was a question of fact for the jury to determine from conflicting testimony. Whether she did, or did not, exercise reasonable care commensurate with the degree of impaired visibility caused by the dust (as determined by the jury) was also a question of fact to be decided by them.

The jury was, by instruction No. 8, advised generally of the nature and effect of contributory negligence. The court further instructed the jury, by instruction No. 15, that:

" . . . it is the duty of every person operating or driving a vehicle of any character upon the public highways of the State of Washington to operate the same in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, *taking into account the amount and character of the traffic, weight of vehicle, grade and width of highway, condition of surface, and freedom of obstruction to view ahead, and consistent with any and all conditions existing at the point of operation* so as not to unduly or unreasonably endanger the life, limb, property or other rights of any person entitled to the use of such public highway, and compliance with the maximum speed limits shall not relieve the operator of any vehicle from further exercise of due care and caution as further circumstances shall require."

■ Thus, the jury was instructed generally upon the degree of care required, as proposed in the first paragraph of the instruction requested by appellant, and, specifically, upon certain factors (italicized above) to be taken into consideration in determining whether either driver exercised the required degree of care. Since the requested in-

struction is merely a specific elaboration of what the court told the jury in more general terms, we cannot say that the refusal to give it constitutes prejudicial error. *Smith v. Harrington*, 93 Wash. 681, 161 Pac. 465 (1916).

Appellant next contends that the trial court erred in failing to instruct the jury that respondent Wines was chargeable with contributory negligence, as a matter of law, proximately contributing to the accident. It is argued that, since Mrs. Wines had actual prior notice of the obstructed north half of the roadway, coupled with the impenetrable nature of the dust near the scene of the accident, she was contributorily negligent in failing to stop or slow materially before the point of impact.

In considering this question, certain basic principles must be borne in mind. First, generally speaking, there is no more justification for the court to hold a plaintiff guilty of contributory negligence as a matter of law than there is to hold a defendant guilty of negligence as a matter of law. *Farrow v. Ostrom*, 10 Wn. (2d) 666, 117 P. (2d) 963 (1941). Second, when contributory negligence is urged as a matter of law, the question is to be determined in the light of the evidence most favorable to plaintiff. *Cunningham v. Dills*, 19 Wn. (2d) 845, 145 P. (2d) 273 (1944). Third, only in rare instances is the court warranted in withdrawing the issue of contributory negligence from the jury. *Berndt v. Pacific Transport Co.*, 38 Wn. (2d) 760, 231 P. (2d) 643 (1951), and authorities cited therein. Fourth, the questions of contributory negligence and primary negligence are so interrelated that the former usually cannot be determined without reference to the latter. It is for this reason this court has frequently said that, in negligence cases, the facts make the law. By the same token, decided cases afford little help in determining the issue in a later case. *Berndt v. Pacific Transport Co., supra*, citing *Hadley v. Simpson*, 9 Wn. (2d) 541, 115 P. (2d) 675 (1941).

Appellant relies on our decisions in *Thompson v. Bellingham*, 112 Wash. 583, 192 Pac. 952, 19 A. L. R. 864 (1920); *Eldredge v. Garrison*, 184 Wash. 687, 52 P. (2d) 1240 (1935); *Dumbolton v. Oregon-Washington R. & Nav. Co.*, 186 Wash.

433, 58 P. (2d) 806 (1936); *Trainor v. Interstate Constr. Co.*, 187 Wash. 142, 60 P. (2d) 7 (1936); and *Pryor v. Safeway Stores*, 196 Wash. 382, 83 P. (2d) 241, 85 P. (2d) 1045 (1938).

The first three of these cases involved driving in fog, whereas the latter two cases involved driving through dust. In all of the cited cases it was held that, under the particular facts presented, the driver was guilty of contributory negligence, as a matter of law, which contributed proximately to the accident.

In *Eldredge v. Garrison, supra,* the plaintiff-driver, proceeding north in dense fog, collided with a section of iron pipe, on the right-hand shoulder of the roadway, in an attempt to avoid defendant's truck which was parked upon the highway (for the purpose of unloading such pipe) and was obstructing plaintiff's lane of travel. A warning barricade, with red flag attached, had been set on the pavement approximately thirty-five feet south of the rear of the truck, which could be seen from approximately twenty-five or thirty feet south of its position. Plaintiff testified that he could have stopped within a distance of about two car lengths, or twenty-eight feet, and that he noticed the wooden frame but thought it was a "sack or a shoe box, or a hat, or something like that." We there said:

"Manifestly, if he had been keeping a proper lookout ahead, he would have seen the danger signal in time to have acted thereon."

In the present case, although appellant had notice of the general condition of the highway obstructing westbound traffic, her lane of travel (eastbound) was not obstructed. She could see the top of the truck which was preceding her.

In the *Trainor* and *Pryor* cases, *supra,* we held that a driver who fails to stop when his visibility is *completely* obscured by dust is contributorily negligent as a matter of law. Here, as previously noted, the extent to which Mrs. Wines' visibility was obscured was a question of fact for the jury to determine from conflicting testimony.

We fail to find a controlling factual similarity between the cases cited and the instant case which would

justify the trial court in holding respondent Wines contributorily negligent as a matter of law. Each case must be decided upon its own facts. *Nicholson v. Nelson,* 27 Wn. (2d) 472, 475, 178 P. (2d) 739 (1947). A review of the record in this case convinces us that the trial court did not err in refusing to give the proposed instruction.

Appellant contends that the trial court erred in instructing the jury, in part, as follows:

"You should likewise consider any loss of earnings, if any, by plaintiff, Coral Wines, sustained, *and any impairment of her earning ability which you find established by the evidence.*" (Italics ours.)

Appellant concedes that the italicized portion of the instruction is correct, but argues that the evidence upon which this issue was submitted to the jury was insufficient to support the instruction. We must agree.

Mrs. Wines prayed for twelve thousand dollars special damages based on the following allegation in her complaint:

"That at the time of the said collision, plaintiff's occupation was that of housekeeper, and in such occupation, was earning the sum of $125.00 per month, and that as a direct and proximate result of the negligence and carelessness and unlawfulness of the defendants, and each of them, and the collision caused thereby and the injuries so received, plaintiff has been prevented from attending her usual occupation and will be totally disabled from following any occupation for a long period of time in the future, all to her damage in the sum of $12,000.00, up to the date hereof."

The only testimony offered in support of this allegation is that of Mrs. Wines as follows:

"Q. And do you know how long, you'd been back in Whatcom County prior to June 9th? A. Oh, I'd say three or four months. Q. And during that period of time where had you been residing? A. Well, I was there part of the time and in town part of the time. Q. Had you been employed? A. I worked off and on. Q. Where did you work? A. I worked for a man on Cornwall Avenue. Q. What type of work? A. House work. Q. Do you know about when you quit that employment, with relation to June 9th? The approximate date, if you recall. A. No, I don't. Q. Well, you had quit that employment? A. Yes. Q. Before this

collision occurred? A. Yes. Q. And what was the reason for your quitting? A. Well, this man left town. Q. He moved back to California? A. I guess; I don't know. Q. He was a store owner and he left town, anyway, is that right? A. Yes. Q. And what was your employment at that time? I mean what was your income, or your wages from your employment? A. $125.00 a month. Q. And did you stay there during this time? A. Yes."

■ There is no evidence as to the duration of Mrs. Wines' employment as a housekeeper, other than that it was limited to three to four months less an indefinite time before the date of the accident. There is no evidence that Mrs. Wines had been employed in any capacity prior to undertaking employment as a housekeeper in Bellingham, except that she said that she worked "off and on." Nor is there evidence that after the termination of that employment she was available for, sought, or intended to seek, other employment. Mrs. Wines was unemployed at the time of the accident, and had been unemployed for an indefinite period prior thereto. Her future activity in relation to employment was certainly not susceptible of a reasonably accurate evaluation based upon the meager testimony relating to her past employment.

While, as appellant concedes, there was sufficient evidence upon which the jury could evaluate the extent and duration of any impairment of earning capacity resulting from the injuries sustained by Mrs. Wines, the evidence wholly fails to support her claim for loss of earnings for any period of time subsequent to the time of the collision. It was, therefore, error for the trial court to submit that issue to the jury for their consideration in the assessment of damages.

■ The total demands of Mrs. Wines aggregated in excess of sixty-four thousand dollars, and the jury returned a lump sum verdict in her favor for $7,791.30. We are unable, under the evidence, to apportion the verdict so as to reduce it by the amount, if any, which the jury awarded Mrs. Wines for loss of earnings up to the time of trial. Cf. Carr v. Martin, 35 Wn. (2d) 753, 215 P. (2d) 411 (1950). Therefore, we are compelled to grant a new trial limited to the issue of damages.

Appellant assigns error to the refusal of the trial court to give its proposed instruction withdrawing from the consideration of the jury the question of appellant's negligence, based upon its failure to give adequate warning to users of the roadway of the dangerous condition existing. There is evidence that both drivers, respondent Wines and defendant Rhode, had actual notice of the condition of the roadway in the vicinity of the pipe-line crossing, and, in view of this, appellant asserts that its failure to give warnings could not have been a proximate cause of the collision.

█ Prior knowledge of the existence of an obstruction upon a highway is not, of itself, conclusive evidence of negligence on the part of the person injured, but is a proper factor for the consideration of the jury in determining the ultimate issue of negligence or contributory negligence and proximate cause. *Morehouse v. Everett,* 141 Wash. 399, 416, 252 Pac. 157, 58 A. L. R. 1482 (1926).

█ The jury may have determined that respondent Wines was justified in proceeding eastward at a reduced rate of speed in view of the fact that her knowledge of the condition of the highway included knowledge that her (eastbound) lane of travel was unobstructed. Likewise, the jury may have found that appellant's failure to provide adequate warnings east of the pipe-line crossing and beyond the crest of the incline (which would apprise westbound motorists of the approaching danger area) constituted negligence proximately causing the collision. See *Sharpless v. Blackmore,* 181 Wash. 603, 44 P. (2d) 170 (1935). For these reasons, appellant's fifth assignment of error is without merit.

Appellant next complains that the trial court erred in giving an instruction by which the issue of agency between respondents Wines and Little was withdrawn from the jury. It is argued that an issue of fact was presented for determination by the jury as to whether a joint adventure did, in fact, exist.

█ With respect to joint adventure, in *Carboneau v. Peterson,* 1 Wn. (2d) 347, 374, 95 P. (2d) 1043 (1939), we said:

"The *sine qua non* of the relationship is a contract, whether it be express or implied. As a legal concept, a joint adventure is not a status created or imposed by law, but is a relationship voluntarily assumed and arising wholly *ex contractu.* The essence of a contract is that it binds the parties who enter into it and, when made, obligates them to perform it, and failure of any of them to perform constitutes, in law, a breach of contract. A mere agreement, or concord of minds, to accompany one another upon an excursion, but without an intent to enter into mutually binding obligations, is not sufficient to create the relationship of joint adventure."

See, also, *Paulson v. McMillan,* 8 Wn. (2d) 295, 111 P. (2d) 983 (1941); *Finn v. Drtina,* 30 Wn. (2d) 814, 194 P. (2d) 347, 2 A. L. R. (2d) 919 (1948).

A review of the evidence in the present case, as viewed most favorably to appellant, fails to disclose any contractual relationship whatsoever between respondents Mrs. Wines and Mr. Little in connection with their mutual interest in the local water association. Since the fundamental requirement (a contract, express or implied), without which the relationship of joint adventure cannot arise, was not established by the evidence, the trial court did not err in withdrawing that issue from the jury.

Assignments of error numbers seven and eight relate to the refusal of the trial court to instruct the jury upon the principles of imputed negligence which follow the joint adventure relationship. In view of our disposition of the immediately preceding issue, the trial court did not err in refusing to give the proposed instructions.

In its third and ninth assignments of error, appellant contends that the trial court erred in denying appellant's alternative motions for dismissal or a directed verdict at the close of respondent Wines' and respondent Little's cases, respectively. Error, if any, in this connection was waived by appellant when it elected to introduce evidence establishing its defense. *Petersen v. Department of Labor & Industries,* 40 Wn. (2d) 635, 641, 245 P. (2d) 1161 (1952), and cases cited therein.

The judgment in favor of respondent Little is affirmed.

The judgment in favor of respondent Wines is reversed and the cause is remanded with directions to grant a new trial *limited to the issue of damages only.*

HILL, C. J., MALLERY, ROSELLINI, and FOSTER, JJ., concur.

February 10, 1958. Petition for rehearing denied.

[1]Reported in 319 P. (2d) 545.