[No. 779-3.    Division Three.    May 2, 1974.]

ARIE BLAAK *et al., Respondents,* v. LAVERNE DAVIDSON *et al., Appellants.*

*Roger L. Olson* (of *Olson & Olson*), for appellants.

*D. Wayne Campbell* and *Campbell & Johnston,* for respondents.

MUNSON, J.—Defendants appeal from a post-trial order granting plaintiffs' motion for a new trial entered after the jury returned a verdict in favor of defendants. The order directed a verdict as to liability against defendants and limited the new trial to the issue of damages.

This action results from a rear-end collision within a cloud of dust on the Pasco-Kahlotus Highway. An automobile driven by the plaintiff Mr. Blaak (Mrs. Blaak was a passenger) was struck by a following gasoline delivery truck driven by the defendant Mr. Davidson, hereinafter referred to as the sole defendant. On plaintiffs' post-trial motion the court held that under the disputed facts of the case, the defendant's visibility became completely obscu-

red; when it became so obscured, as a matter of law he had a duty to stop his vehicle. *James v. Edwards,* 68 Wn.2d 194, 412 P.2d 123 (1966); *Pryor v. Safeway Stores, Inc.,* 196 Wash. 382, 83 P.2d 241, 85 P.2d 1045 (1938); *Trainor v. Interstate Constr. Co.,* 187 Wash. 142, 60 P.2d 7 (1936); *Eldredge v. Garrison,* 184 Wash. 687, 52 P.2d 1240 (1935). Such is a correct statement of the most recent pronouncement of the law in this state on this question. *See also Wines v. Engineers Ltd. Pipeline Co.,* 51 Wn.2d 487, 319 P.2d 563 (1957).

Defendant, the driver of the gasoline truck, testified at various points during trial that he had: "No visibility"; "It [visibility] was zero at the point of impact"; "But for all practical purposes it [visibility] was zero." This testimony is conclusive. At various other points during trial, defendant testified that he could see a few feet, most often stating that he could see, at the most, about 10 feet. Nevertheless, for all practical purposes, as he admitted, visibility was zero. This is further shown by his testimony that visibility was so obscured that it was necessary for him to look out the driver door window and follow the center line in order to sustain his forward movement of 5 to 10 m.p.h.

In the order directing a verdict against defendants, the court stated that plaintiffs' negligence, if any, was not a proximate cause of the collision. Defendant assigns no error on appeal to that determination; therefore it stands affirmed. The defendant was negligent as a matter of law in failing to stop his truck, and such action did contribute proximately to the accident. The directed verdict as to liability stands correct.[1] We affirm.

---

[1] We wish to note, however, that the court's order directing a verdict against defendants states defendants "are found guilty of negligence as a matter of law and the court hereby directs the verdict against them on the issue of liability, . . ." A new trial on the issue of damages, only, was awarded. It is clear from the order that the trial court was using the term "negligence as a matter of law" in a broad sense to include the element of proximate cause, leaving only the computation of a monetary amount as damages for the jury's determination. *See Shannon v. Grand Coulee,* 7 Wn. App. 919, 503 P.2d 760 (1972).

■ The duty to stop when vision is totally obscured has most recently been expressed in *James v. Edwards, supra* at page 198, as follows:

Appellants concede that it is clear from our cases that one whose vision is completely obscured is negligent as a matter of law, but that such a rule does not apply to a driver whose vision is partly obscured, and that appellant's vision was only partly obscured because he could see to the left front and left side of his car.

Fog was involved in the case of *Eldredge v. Garrison,* 184 Wash. 687, 692, 52 P.2d 1240 (1935). The court said:

Such an atmospheric condition frequently causes, and *even requires, vehicles to stop on the highway* . . . . While a driver's attention . . . may properly be directed to the right-hand margin of the pavement, to be free from negligence a driver must proceed at no rate faster than one which will allow him to also carefully observe the roadway in front of him and devote such attention to the roadway as will allow him to observe anything resting thereon in time to take appropriate action.

This is the rule that has been consistently followed by this court. Appellant should not drive any faster than that speed which would allow him to also observe the roadway to the front and right side and give such attention to such part of the roadway as will allow him to observe anything thereon in time to take appropriate action, which *would include the duty to stop.*

To the extent that appellant could not see things on the right front of his car and to the right, as to those, it was the same as if he could not see at all. As to persons or property not able to be seen by a driver by virtue of total obstruction to part of his view, it is the same as if his vision was completely obscured.

Since appellant did not and could not see respondent and the barricades, the trial court properly held him to be negligent as a matter of law.

(Italics ours.)

Defendant disputes that he "entered" an existing cloud of dust; he contends he was "engulfed" by a cloud of dust as he drove along the highway. He would distinguish *James* and its ancestry on this basis. We perceive, from this record, such distinction makes no difference. There is no con-

tention that defendant did not have a reasonable opportunity to stop his vehicle upon the roadway after visibility was reduced to zero. He testified that, after being engulfed by the dust cloud, he proceeded—"probably 40, 50 yards, something like that" or "approximately 75 yards; 50, 75 yards"—at a speed of 5 to 10 m.p.h. This shows conclusively he could have stopped his vehicle. Defendant also testified that he was proceeding, at this slow rate of speed, in an attempt to get through the dust cloud, knowing of a turnoff a short distance ahead of the location of the accident. He had no intention of stopping once the dust cloud engulfed him. Consequently, even if he was "engulfed" by the cloud, he had time to stop his vehicle, but did not; he was negligent as a matter of law for failing to do so.

This result can also be affirmed upon an alternative basis. Assuming arguendo that the defendant had some limited visibility, he could only proceed at a speed which would allow him to take appropriate action, including the ability to stop, if he observed something on the roadway. *James v. Edwards, supra.* The fact that plaintiffs were proceeding in much the same manner, does not relieve the defendant of his duty as the following driver. As stated in *Miller v. Cody,* 41 Wn.2d 775, 778, 252 P.2d 303 (1953).

> The following driver is not necessarily excused even in the event of an emergency, for it is his duty to keep such distance from the car ahead and maintain such observation of that car that an emergency stop may be safely made.

*Cf. Torrez v. Peck,* 57 Wn.2d 302, 356 P.2d 703 (1960). The defendant knew he was in a hazardous situation. He had the duty to drive his vehicle, if he chose not to stop, in such a manner as would enable him to effect an emergency stop. This he did not do.

The defendant contends that the better rule in this situation is as stated in *Devoto v. United Auto Transp. Co.,* 128 Wash. 604, 609, 223 P.1050 (1924):

> but, proceeding, they came into places where the fog was so dense that the white light of the headlights was mir-

rored back to the driver and he could see nothing in advance of his automobile. Under such conditions, shall a driver stop in the fog bank until the fog clears? If one does so, all must do so, or the danger would be thereby increased; and if all stop, how shall anyone reach his destination? It seems to us in reason that traffic must be permitted to move on the highway at all times, but that, in driving through a fog bank, each driver must do so in a careful and prudent manner with due regard for the safety of others, and what is careful and prudent under the particular conditions shown will usually be a question for the jury.

In *Morehouse v. Everett*, 141 Wash. 399, 252 P. 157, 58 A.L.R. 1482 (1926), the court modified the "drive within the radius of your lights" rule. At page 409 the court stated:

In many portions of this state fogs are frequent—fogs so thick that the driver of an automobile cannot, by means of his headlights, clearly distinguish an object five feet in front of him. Must he stop on the road? If so, all others must do the same, and thus all traffic must cease. And in the process of stopping and blocking the road, many collisions must occur. A rule that will force this condition is a dangerous one and must do infinitely more harm than good.

Also of note is the case of *Cunningham v. Dills*, 19 Wn.2d 845, 145 P.2d 273 (1944). The factual pattern in that case was very similar to that in the instant case, except that the element restricting visibility was icy fog. In *Cunningham*, Mr. Dills stopped his vehicle in a traveled lane of the road because the fog and ice on his windshield had totally obscured his vision. He was then struck from the rear by Mr. Cunningham's vehicle, which was proceeding through the fog by following the center line out of the driver-side window, unable to see because of the ice and fog out of the front window. The court, relying on *Devoto v. United Auto Transp. Co., supra,* and *Morehouse v. Everett, supra,* held that both the question of negligence of Mr. Dills and the question of negligence of Mr. Cunningham were properly

questions for the jury to determine. *Cf. Ewer v. Johnson,* 44 Wn.2d 746, 270 P.2d 813 (1954).

This court is sympathetic to defendant's position. We perceive the more common driving practice is to proceed through fog or dust much in the same manner as did the defendant. There is also merit to the defendant's contention that to stop a highly dangerous gasoline truck upon the main traveled portion of the road in a cloud of dust would be extremely dangerous to the driver and to others. Thus, *Devoto, Morehouse* and *Cunningham,* leaving the question of reasonableness to the jury, present a realistic and reasonable approach to cases of this factual pattern.

Nevertheless, *James v. Edwards, supra,* the latest pronouncement by our Supreme Court on the precise question presented affirms the position that when visibility is totally obscured, there is a duty to stop.

Judgment is affirmed.

McINTURFF, J., concurs.

GREEN, C.J. (dissenting)—I would reinstate the jury verdict in favor of defendants under the line of authority represented by *Cunningham v. Dills,* 19 Wn.2d 845, 145 P.2d 273 (1944); *Morehouse v. Everett,* 141 Wash. 399, 252 P. 157, 58 A.L.R. 1482 (1926); and *Devoto v. United Auto Transp. Co.,* 128 Wash. 604, 223 P. 1050 (1924). These cases most nearly resemble the factual situation that confronted the parties in the instant case and hold that the issue of negligence is for the jury. Under the evidence in the instant case, the jury could have found that both plaintiff and defendant were negligent in driving into the dust cloud or, on the other hand, they could have found that the dust suddenly engulfed both parties creating an emergency situation in which neither party should be held negligent—an act of nature over which neither party had any control. Moreover, the shoulder was too narrow to allow defendant to pull off the roadway. For the court to hold that defendant was negligent as a matter of law for not stopping his loaded gasoline truck weighing 18,000 pounds in the main portion

of the highway, knowing that large wheat trucks and petroleum tankers regularly used that highway, invades a factual area that is more properly reserved for the jury. The danger contemplated by the defendant driver became a reality when a tanker traveling in the opposite direction struck another car which had stopped at the point of the accident involved in this case.

The line of cases culminating in *James v. Edwards,* 68 Wn.2d 194, 412 P.2d 123 (1966), relied upon by the majority, are factually distinguishable and the obligation to stop should be limited to similar special-type situations. In *James v. Edwards, supra,* for example, the defendant with the sun in his eyes drove through a barricade in the street and hit a workman.

In my view, the trial court properly submitted the issue of defendant's negligence to the jury. The court erred when, on reconsideration, it granted plaintiff's motion for directed verdict against defendants and ordered a new trial on the issue of damages.

I would reverse.

Petition for rehearing denied June 10, 1974.

Review granted by Supreme Court July 30, 1974.